ABRAHAM S. RHODES *et al.*, Appellants, *v.* GEORGE W. OUTCALT AND THE MERCHANTS' BANK OF ST. LOUIS, Respondents.

1. *Notice sufficient to put one on inquiry sufficient.*—Notice sufficient to put one upon inquiry as to the existence of a right or title, is in law presumed to be notice of such right or title. But such presumption may be repelled by proof that he failed to discover such right notwithstanding the exercise of due diligence.

2. *Mortgages and deeds of trust — Mistake in description — Grantee treated in equity as purchaser of land intended to be conveyed — Rights of purchaser having knowledge of mistake— What facts sufficient to put upon inquiry.*—A. owned city property designated as "lots 10, 11 and 12, in block 7." He made a deed of trust intending to convey the same, but, by mistake, the land described in the deed was lots of corresponding numbers in block 6, wherein he owned no real estate.

*Held,* 1st, that notwithstanding said false description, the grantee in equity actually secured a lien on the property intended to be conveyed; and not a lien merely, but his rights were such that he would be regarded in the light of an actual purchaser. The debtor was bound in conscience to correct the mistake. And his obligation to correct it was such an equity as would bind his heirs, voluntary grantees and purchasers with notice. 2d, that where a creditor of A. subsequently had the land in block 7 sold under a judgment against A., and bought it in — knowing, at the time, of the deed of trust, and of the fact that A. owned the property sold, and not that in block 6 — the purchaser had knowledge sufficient to put him on careful and diligent inquiry as to the rights of the grantee in the deed of trust, and that he bought subject to the lien of that deed.

*Appeal from Chariton Circuit Court.*

*Chas. A. Winslow*, for appellants.

I. The principle contended for by the bank, that all the parties being creditors seeking a preference made their equities equal, and precluded the court from exercising its jurisdiction to disturb the title acquired by the bank, is not supported by any authority, and is directly in conflict with numerous decided cases

directly in point. (White v. Wilson, 6 Blackf. 448 ; Chamberlain v. Thompson, 10 Conn. 243 ; Young v. Coleman *et al.*, 43 Mo. 179.)

II. One of the principles for determining the priorities of equities is that a party taking with such notice of an equity takes subject to such equity. The deed of trust to Rhodes being prior in point of time, and the bank having purchased with notice of the mistake, the notice of the appellants was superior and should have been enforced. (Adams' Eq., 5th Am. ed., 306, 311–12 ; White v. Wilson, *supra* ; Chamberlain v. Thompson, *supra* ; Wilson v. Tizzard, 15 Iowa, 495 ; Steany v. Beach, 11 Ohio St. 283 ; Young v. Coleman *et al.*, *supra*, ).

III. The bank purchased with full notice of the mistake in the deed of trust, having sufficient knowledge or information to put him on inquiry. Applegate is presumed to have made the necessary investigation, and will be held to have had actual notice of everything which the inquiry thus suggested would have disclosed if prosecuted with due diligence. He can only escape the consequences of actual notice by showing a diligent and unavailing inquiry, and the exhaustion of all the available sources of information suggested by his knowledge. And notice to Applegate is notice to the bank in this case. (Speck v. Riggin, 40 Mo. 405 ; LeNeve v. LeNeve, 2 L. C. Eq., 3d Am. ed., 152 *et seq.*, and note ; Williamson v. Brown, 15 N. Y. 534 ; Baker v. Bliss, 39 N. Y. 70 ; Allen v. McCalla, 25 Iowa, 482 ; First National Bank of St. Paul v. Com. Scott County, 14 Me. 77; O'Reilly v. Nicholson, 45 Mo. 165 ; Benoist v. Darby, 12 Mo. 196.)

*Prewitt*, for respondents.

I. There is no evidence in this case that the bank or its agents had any knowledge of any conveyance or intention or attempt to convey the lots in controversy by Outcalt to the plaintiffs. The bank having purchased and paid for them, and got the legal title without any notice of plaintiff's claim, has the best equity and the legal title. (2 L. C. Eq. 110.)

II. The petition contains no equity so far as appears therefrom. The conveyance to Rhodes was a voluntary conveyance

without consideration, and raises no equity to correct a mistake against any one with or without notice. (1 Sto. Eq., § 164.)

III. The evidence shows that the bank has at least an equal equity with the plaintiffs, and has the legal title, and the court will not disturb it. A creditor who pays out nothing, but attempts to get a preference over another creditor by taking a mortgage, is not entitled to the aid of a court of equity. He can hold as against other creditors only what he actually gets. (2 Lead. Cas. Eq. 104–5, and cases cited.) He is not a purchaser for value.

IV. Whether we look at the petition (15 Mo. 272; Dougherty v. Mathews, 32 Mo. 520) or the testimony in the case, the question of notice is immaterial; the plaintiffs have no equity, and the decree ought to stand. (1 Sto. Eq., § 176; Young v. Coleman, 43 Mo. 185.)

CURRIER, Judge, delivered the opinion of the court.

This is a suit in equity brought to reform and correct an alleged mistake in the descriptive part of a deed of trust. The case shows that the defendant Outcalt, on the 22d of September, 1862, by his deed of trust of that date, undertook to convey to the plaintiff Rhodes, to secure debts then owing by him to the beneficiaries named in the deed, certain real estate situated in Brunswick, Chariton county, Missouri. The deed described the premises as " lots 10, 11 and 12, in block *six*, of the city of Brunswick." These lots were not then owned by him, but he owned lots of the same numbers in block *seven* of said city, on which his then residence was situated. It was these latter lots that he intended to convey, as does not seem to be questioned. The mistake consisted in locating them in the wrong block — that is, in block 6 instead of block 7. Outcalt was at the same time largely indebted to the Merchants' Bank, one of the defendants herein. In 1863–4 the bank obtained several judgments against him upon these claims, amounting in the aggregate to some $18,000. These judgments remained unsatisfied, and the bank, on the 26th of March, 1868, sued out executions upon them, and caused levies to be made upon lots 10, 11 and 12, in block 7, as the property

of Outcalt. The lots were subsequently duly advertised and sold by the sheriff, and the bank bid them in for a nominal sum.

The petition charges that the bank purchased the lots with notice of the deed of trust and of the alleged error therein, and consequently with notice of the plaintiff's title and claim. This the answer denies, and the first inquiry respects the matter of fact thus put in issue by the pleadings. The plaintiffs seek to affect the bank with notice by showing actual notice to its agent. A notice is regarded in law as actual when the party sought to be affected by it knows of the existence of the particular fact in question, or is conscious of having the means of knowing it, although he may not employ the means in his possession for the purpose of gaining further information. (Speck v. Riggin, 40 Mo. 405; Wh. & Tud. Lead. Cas. Eq., 3d Am. ed., 152.) "Actual notice," says Selden, J., in Williamson v. Brown (15 N. Y. 359), "embraces all degrees and grades of evidence, from the most direct and positive proof to the slightest circumstance from which a jury would be warranted in inferring notice." In the case last referred to, the rule is laid down that "where the purchaser has knowledge of any fact sufficient to put him upon inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim to be considered a *bona fide* purchaser." "This presumption," as it is further held, "is a mere inference of fact, and may be repelled by proof that the purchaser failed to discover the prior right notwithstanding the exercise of due diligence on his part." The evidence in the case at bar must be examined and applied in the light and under the guidance of these principles.

The evidence shows that William C. Applegate was the agent of the bank at Brunswick, and in charge of its business at that point; that prior to the execution sale, and a short time prior to the issue of said executions, he had an interview with John Knappenberger, who kept at Brunswick an abstract of all the records of conveyances of lands and town lots in the county of Chariton, in which Brunswick is situated. In the course of this interview

it appeared that Applegate's attention had been called to the fact that the deed of trust to Rhodes did not cover the lots in block 7, which were owned by Outcalt, and that such fact was a subject of conversation between them. Knappenberger's abstract showed that the deed covered lots 10, 11 and 12, in block 6, on which was situated the residence of one Manzey; and that it did not cover lots 10, 11 and 12, in block 7, on which was situated Outcalt's residence. In the course of the interview Applegate inquired of Knappenberger "if the abstract might not be wrong and not the deed," showing that in his view the deed was wrong if the abstract was right. It further appears that these two parties, a short time before the executions were issued, met again, and this time at the county seat where the records were, and that Knappenberger called Appleton's attention to the state of the records, and to the fact that the record of the deed of trust agreed with the former's abstract; thus showing that the abstract was correct, and that the error, according to Mr. Applegate's reasoning, was in the deed. Did Mr. Applegate make any further inquiry as to the facts of the transaction? He was the agent of the bank at Brunswick, and the executions were soon after issued and levied on the lots in block 7. Mr. Applegate clearly was in possession of facts which should have put him upon very diligent and careful inquiry. He knew that Outcalt's deed of trust, instead of conveying the grantor's property, assumed to convey the property of one of his neighbors. It was not strange that an error should have occurred in giving the number of the block; and Applegate had the best of reasons for his supposition that there was something wrong about the deed. If he made the proper inquiries in the proper quarter, he must be presumed, in the absence of evidence to the contrary, to have ascertained the facts. If he neglected all inquiry the fault was his own, and his principal can derive no advantage from his negligence. Mr. Applegate might possibly throw some light on this subject, but he was not produced upon the stand; nor is his absence in any way explained or accounted for. His non-appearance is significant. My conclusion is that Applegate had what the law regards as actual notice of the error in the deed, and of

the plaintiff's right. Notice to him was notice to the bank. (LeNeve v. LeNeve, 2 Wh. & Tud. Lead. Cas. Eq. 127.)

But counsel insist that the plaintiffs are not entitled to the relief sought, notwithstanding the notice. It is true that this contest is between creditors, and it is therefore urged that their respective equities are equal, and that a court of equity will not interfere in behalf of one set of creditors against another having equal equities. There is force in this view; for it must be granted that in all cases of relief by aiding and correcting defects and mistakes in the execution of instruments and powers, the party asking relief must stand upon some equity superior to the party against whom he asks it. (1 Sto. Eq., 9th ed., § 176.) Have the plaintiffs, then, an equity superior to that of the bank? The case of Welton v. Tizzard, 15 Iowa, 495, is not distinguishable in principle from that now under consideration; and I cannot answer the question just raised better than by quoting at large the reasoning of Dillon, J., upon the point involved in the query. He says, in giving the opinion of the court in the case referred to: "The plaintiff is confessedly the first in point of time. His is the elder right. The debtor for a valuable consideration agreed to execute a mortgage (for the deed of trust may for the purpose of this suit and for convenience' sake be so called) on lands which he owned, not on lands which he did not own; that is, he agreed and undertook, though defectively in the case of a court of law, to bind these lands of his — to set them apart, specifically to appropriate them to the plaintiffs. Now, in equity he did thus bind, appropriate and set them apart. Therefore in equity, which deems as done that which the party agreed to do, the plaintiff had not only a mortgage, but a mortgage on the right land — upon the land intended. In equity the plaintiff did not, as contended, simply attempt to get a lien, but he actually secured a lien upon the parcels designed to be conveyed to him; and not a lien merely, but his rights were such that he is regarded by the decisions of this court as he would be regarded by the decisions of other courts — in the light of a purchaser. (4 Iowa, 571; 11 Iowa, 174.) The debtor was bound in conscience to correct the mistake. His obligation to correct it was such an equity as would

bind his heirs, voluntary grantees, or purchasers with notice. Such are the plaintiff's rights. Now the defendant is subsequent in point of time. He has no specific lien. He takes just what the statute gives him, for judgment liens are wholly created and regulated by statute. Unlike the plaintiff, he had no agreement with the debtor for a lien on this property. Unlike the plaintiff also, he has no special tie which binds — no equity which fastens itself upon and clasps the specific property. He has a lien at large — a mere right to acquire a right to this property by a levy and sale. His rights, before a sale without notice, are co-extensive only with those of the debtor. He comes in under the debtor; that is, under one who is in conscience bound, and who in equity would be compelled, to rectify the error in the antecedent conveyance. The equities of the parties are not equal either in point of time or point of right."

The views above expressed by Judge Dillon are in all respects applicable to the case now under review, and they are views abundantly sustained by adjudicated cases. (See authorities cited in the opinion, particularly the New York cases, and White v. Wilson, 6 Blackf. 448.)

The equity, then, of the plaintiffs in this suit is superior to that of the bank, and must prevail. The judgment of the court below, which is based on a contrary view, must be reversed and the cause remanded. The other judges concur.