## Cox, *Appellant*, v. ESTEB, *et al.*

**Equitable Relief**: MISTAKE: PRIORITY. Where the beneficiary in a mortgage, in which the land intended to be conveyed is misdescribed, brings suit to have such mistake corrected, making the holder of a subsequent mortgage covering the same land a co-defendant with the mortgageor, alleging that the later mortgagee, when he took his mortgage, had knowledge of the mistake in the description of the land in the first mortgage, and asking that the lien of the first mortgage be declared prior to that of the second, if the evidence sustains the allegations of the petition, equity will correct the mistake and declare the lien of the first mortgage prior to that of the second.

*Appeal from Caldwell Circuit Court.*—HON. E. J. BROADDUS, Judge.

REVERSED.

*Crosby Johnson* for appellant.

(1) A court of equity has power to correct mistakes in deeds and mortgages. *Bresheban v. Price*, 57 Mo. 442;

*Rayburn v. Deaver*, 8 Mo. 104. And in the exercise of this jurisdiction it is not restricted to the parties to the deed, but may include purchasers with notice. *Burnside v. Wayman*, 49 Mo. 356; *Young v. Coleman*, 43 Mo. 179. (2) Notice is actual or constructive. Actual notice consists in a knowledge that a deed, though not recorded, was actually made; or of a knowledge of such facts and circumstances as would create in the mind of a man of ordinary circumspection an impression that others had acquired rights in the property. *Speck v. Riggin*, 40 Mo. 405; *Rhodes v. Outcalt*, 48 Mo. 367; *Fellows v. Wise*, 55 Mo. 413; *Eck v. Hatcher*, 58 Mo. 235. A purchaser will be deemed to have notice of facts which would have been ascertained by a man of ordinary prudence. *Muldrow v. Robinson*, 58 Mo. 331; *Ridgeway v. Holliday*, 59 Mo. 444. (3) One purchasing with notice of an equitable mortgage or an agreement to mortgage, takes subject to such incumbrance. *Davis v. Clay*, 2 Mo. 161; *Farras v. Patton*, 20 Mo. 81. (4) To constitute one an innocent purchaser, as against a prior unrecorded conveyance or an equitable title, he must have paid a valuable consideration. *Maupin v. Emmons*, 47 Mo. 304; *Aubuchon v. Bender*, 44 Mo. 560; *Foster v. Holbert*, 55 Mo. 22. The purchase must not only be for value, but the purchase money must be paid before notice. *Paul v. Fulton*, 25 Mo. 156; *Rice v. Runce*, 49 Mo. 231; *Digby v. Jones*, 67 Mo. 104; *Wallace v. Wilson*, 30 Mo. 335. He is not an innocent purchaser for value when the conveyance is taken in payment of a pre-existing debt. Willard's Eq., 256; *Dickinson v. Tillinghast*, 4 Paige 215; *Webster v. Van Steenberg*, 46 Barb. 211; *Padgett v. Lawrence*, 10 Paige 180; *Cary v. White*, 52 N. Y. 138; *Laneey v. Stearns*, 66 N. Y. 157; *Haughwont v. Murphy*, 21 N. J. Eq. 118; *Johnson v. Graves*, 27 Ark. 557; *Orme v. Roberts*, 33 Tex. 768; *Hardin v. Harrington*, 11 Bush. 367; *Baldwin v. Sager*, 70 Ill. 503. (5) The recital in the deed to William, that William was to pay the plaintiff's mortgage, was notice to all claiming under William of plaintiff's mortgage. 2 Washb. on Real Prop., 596;

*Scott v. Douglass*, 7 Ohio 227; *Carver v. Jackson*, 4 Peters 85; *Major v. Bukley*, 5 Mo. 227.

*C. S. McLaughlin* for respondents.

This court cannot take into consideration any errors complained of in the bill of exceptions, for the reason that the bill was never filed in the case. The only filing is the indorsement by the clerk "filed," giving date, etc., but no record was ever made of the filing by the clerk, as required by law. See *Pope v. Thompson*, 66 Mo. 661; *Fulkerson v. Houts*, 55 Mo. 301; *Baker v. Loring*, 65 Mo. 527; *Johnson v. Hodges*, 65 Mo. 589; *Clark v. Bullock*, 65 Mo. 535. When this case was in this court before, it was held there was no evidence to sustain plaintiff's cause of action. 68 Mo. 110. The evidence now is substantially the same as on the former trial. The second mortgage was not a mere voluntary conveyance. *Swift v. Tysen*, 16 Peters 1; *Atkinson v. Brooks*, 26 Vt. 574. Notice is either a question of law or fact. 1 Story's Eq., (Redf. Ed.) § 399. In this case it is a question of fact. This court will not reverse the finding of a trial court if there is any evidence to support it. *Blumenthal v. Torini*, 40 Mo. 159; *Allen v. Richmond College*, 41 Mo. 302; *Faugman v. Hersy*, 43 Mo. 122; *McCune v. Esfort*, 43 Mo. 134. Nor where the issues are tried by the court without a jury. 48 Mo. 43. To establish notice, the proof must be clear and unequivocal. *McMechan v. Griffing*, 3 Pickering 154. Suspicion of notice, though a strong suspicion, is not sufficient. *Hine v. Dodd*, 2 Atk. 275; 6 Barb. 60. Notice must be proved beyond all reasonable doubt. *Rogers v. Wiley*, 14 Ill. 65. It must be direct and positive. *Fort v. Bunch*, 6 Barb. 60; *Jackson v. Given*, 8 Johns. 107. Hearing reports or rumors is not notice. *Colquitt v. Thomas*, 8 Ga. 258. To constitute a binding notice, it must be given by one interested in the property, and in the course of the treaty for the purchase. 2 Sugd. 537, 538; *Rogers v. Hukins*, 14 Ga. 166. Flying reports are many times fables, and

if admitted for sufficient notice, the inheritance of every man might easily be slandered. *Wildgow v. Wayland Goulds*, 147 Pl. 67. A conveyance in payment of a debt is not voluntary. 1 Story's Eq., § 433, and authorities there cited. A vendor's lien will not be enforced against a mortgage to secure a pre-existing debt. *Bailey v. Greenleaf*, 7 Wheat. 46; *Bank v. Sayer*, 8 Ala. 886; *Adams v. Buchanan*, 49 Mo. 64. There is a distinction between a general assignment for the benefit of creditors, and a particular assignment to specified creditors for their particular security. The former are considered mere volunteers. The latter as any other *bona fide* purchasers. 2 Story's Eq., (Redf. Ed.) §§ 1228, 1229; 4 Kent (12 Ed.) p. 154.

RAY, J.—As we gather from the record, Wm. M. Esteb, in 1872, purchased a farm of 107 acres, in Caldwell county, Missouri, from a man named Merchant. The place was at that time under mortgages from Merchant to Caldwell county, and to the plaintiff Cox. The deed from Merchant to said Wm. Esteb, as appears by the record before us, contained the following clause: "Subject to a mortgage given to Caldwell county, and also to John D. Cox. Which mortgages Esteb assumes and agrees to pay."

At, or about the time, Wm. M. Esteb purchased the land from Merchant, desiring to obtain a further continuance of said loan, he agreed with the plaintiff, that if the plaintiff would release the deed of mortgage given on the land by Merchant, he would execute and deliver to plaintiff a new note and mortgage from himself, on all said lands, to secure the payment of said loan. Under, and in accordance with said agreement, said Wm. M. Esteb, on February 12th, 1873, delivered to plaintiff his said note for the sum of $1,612 and interest, and executed in lieu of the mortgage from Merchant, which was thereupon released and cancelled, his own mortgage to secure the payment of said note, which was designed and intended to convey the same lands described and conveyed by the Merchant deed of

mortgage to Cox, and said deed from Merchant to Esteb, but by accident or mistake, the 80 acre tract thereof was described in said mortgage from Wm. Esteb to Cox, the plaintiff, as the east half of the northeast quarter of section 20, township 56, range 28, instead of by the correct numbers, to-wit, the east half of the northeast quarter of section 21, same township and range.

In January, 1874, Wm. M. Esteb executed to his father, John M. Esteb, a mortgage on the east half of the northeast quarter of section 21, township 56, range 28, to secure, we believe, the sum of $900. This, as will be remembered, is the same 80 acres that was in the deed from Merchant to Wm. M. Esteb, and in the mortgage from Merchant to Cox, and was omitted by mistake from the Mortgage from Wm. M. Esteb to plaintiff. The plaintiff brought this action against the defendants to correct this mistake in the description of the land in the mortgage from Wm. M. Esteb to him, and to have the lien thereof declared superior to the lien of the mortgage given to John M. Esteb. Upon the first trial of the cause the plaintiff obtained a judgment, which on appeal by defendant to this court, was reversed and the cause remanded. See 68 Mo. 110. On the second trial, the judgment was in favor of defendants, from which the plaintiff appealed.

Plaintiff has filed an amended petition in the cause, alleging, as was done in the original petition, that John M. Esteb had notice of said mistake in his mortgage, and further setting out the said purchase of the land by Wm. M. Esteb from said Merchant, and a description of the land in said deed, and, also, the clause therein to the effect that the land was subject to said mortgage to plaintiff, which said Esteb thereby assumed to pay off. And further charging that the consideration for the mortgage from Wm. M. Esteb to his father John M. Esteb, was a pre-existing debt, and, also, charging that Wm. Esteb, at the time he executed the deed of mortgage to the plaintiff, was not, and had never been the owner of the east half of the northeast

quarter of section 20, and that J. M. Esteb, the father well knew that fact.

The defendant, Wm. M. Esteb, filed an answer. The separate answer of J. M. Esteb denied, generally and specifically the material allegations contained in the amended petition.

Upon the trial the plaintiff put in evidence said deed from Merchant to Wm. M. Esteb, dated December 10th, 1872, and recorded January 8th, 1873, under which Wm. M. Esteb acquired and held the land. Said deed contained a correct description of the 80 acre tract in controversy, as being situated in section 21, and a particular and correct description of the other land embraced in said Merchant's place, and therein conveyed. It may be further stated, in regard to the evidence, that it showed that Wm. M. Esteb never was the owner of the east half of the northeast quarter of section 20, or any other land in that section, which fact, it is conceded, was not in evidence on the former trial. Such other portions of the evidence, as we deem necessary or important, will be noticed in the proper connection, in the course and progress of this opinion.

The evidence discloses that John M. Esteb, the father, knew that the Merchant place which included the east half of the northeast quarter of section 21, the 80 acre tract in controversy was incumbered by the plaintiff's mortgage. Defendant claims, however, that said John M. Esteb, did not know the boundaries of the Merchant place, so purchased by his son, nor whether it extended over into section 20, or not, and that he supposed the place embraced as much as 200 acres, and the defendant further claims that said John M. Esteb, the father, did not know the amount of the Cox debt, or what amount of lands were embraced in the Cox mortgage. But we think, under the evidence as preserved and set out in the record now before us, that John M. Esteb could not reasonably suppose that it embraced said amount of land, which is about double the amount actually conveyed in the deed to Wm. Esteb. The evidence, we think, tends strongly

to show that he had a substantial knowledge of the bound=
aries and extent of the place. He had lived more than teñ
years in its immediate neighborhood. The Merchant plaöe,
in fact, almost cornered with his farm; he admits he knew its
north and south lines, he designates lands which he says he
knew were embraced in it, others that were not, and tes-
tifies that he went upon it with his son, on the Sunday be-
fore the son traded for it, to advise and consult with him
about the trade, and while he does not remember whether
the son pointed out the lines to him or not, he states that
from the hill they could see over the whole place.

As the son had no other lands, we infer that he lived
upon the 80 acres in controversy, and where the house was
situated, from the time of his purchase to the date of the
mortgage to his father, or for more than a year, and as the
relations between them are shown to be intimate and
friendly, we think it may be reasonably supposed, that he
was, during that time, frequently at his son's place. We do
not see how, under the evidence before us, he can be per-
mitted to avail himself of a want of knowledge, in fact, of
the metes and bounds of the land included in the Merchant
place, or of the fact, as he says he supposed it was, that the
Merchant place embraced as much as 200 acres. We think
he is concluded upon this point by the evidence now before
us, both as to the identity of the land, and as to its quantity
and boundaries *Rhodes et al v. Outcalt*, 48 Mo. 367. Said
deed of Merchant to Wm. M. Esteb, dated December 10th,
1872, and recorded January 8th, 1873, and one year and
more before the father, John M. Esteb, took his mortgage
from his son, and from which it may be added, the witness
Thomas Butts, who was acting at the time for John M.
Esteb in the examination of the title, got the description of
the lands, is, we think with its recitals, touching the 80 acre
tract in controversy, conclusive and binding upon John M.
Esteb. This deed was one of the muniments of his own
title; it was upon record. And the law, we think, imputes
to and charges him with a knowledge of what it contains,

touching the tract in question. This deed, as we gather, and the defendant's counsel so states, was not in evidence in the former trial.

The evidence, now before us, further shows, and it is conceded on all hands, that Wm. M. Esteb never owned the east half of the northeast quarter of section 20, the eighty acre tract described by mistake in Wm. M. Esteb's mortgage to plaintiff, which fact, it is further conceded, did not appear in evidence upon the former trial. After testifying that he never owned the east half of the northeast quarter of section 20, Wm. M. Esteb says in his evidence, he did not know whether his father knew who owned it or not. John M. Esteb testifies: " I did not know how much land there was in the Merchant place. I supposed there was 200 acres of it. I knew that William did not own any land, except that got from Merchant. I did not know that he did not own any over in section 20. I did not know the boundaries." The evidence then shows that John M. Esteb knew that his son owned one eighty acre tract, as a part of the Merchant place, to-wit, the eighty in section 21, conveyed by the Merchant deed on which he took his mortgage, and which is the land in controversy. He did not know, as a matter of course, and we do not think his evidence shows that he ever supposed that his son had another eighty acre tract in section 20. His evidence merely goes to the extent, as we think, of showing that, as he did not know the extent or boundaries of the place, he did not know whether some of the land extended into section 20 or not.

Said deed from Merchant to William M. Esteb, also, further contained, as we have before said, a clause that it was made subject to a mortgage in favor of the plaintiff, which Wm. M. Esteb thereby assumed to pay off. *Rhodes v. Outcalt*, 48 Mo. 367. Defendants' counsel concede that John M. Esteb is presumed to have examined this deed, and to have seen its recitals, but claims that his rights could not, in any manner, or to any extent, be affected thereby;

because when he refers to the record of the mortgage from Merchant to Cox, the one recited in the deed, he finds that the same was cancelled one year prior to the time he took his mortgage, when the examination is presumed to have been made. The mortgage from Merchant to Cox, as we gather, had been sometime upon the record, and the evidence before us shows that the mortgage from Wm. Esteb to Cox was, in fact, in lieu of the Merchant mortgage; they were given to secure the same loan; the release of the Merchant mortgage and the execution of the Esteb mortgage to Cox were contemporaneous, and they were, we think, parts of the same transaction. Although cancelled upon the record, the defendant, John M. Esteb, as his testimony shows, knew that the debt had not been paid, nor any part of it. The mortgage from Wm. Esteb to Cox, given in place of it, for the same loan of money and intended by the parties thereto to convey the same lands, is put upon the record and decsribes the other lands embraced in said deed, from Merchant to Esteb, the same in all respects, as therein described; same ·parcels, same amount, and but one eighty acre tract, which bore the same numbers, except as to the section. The Merchant deed to Esteb called for but one eighty acre tract located in section 21, and called for no land in section 20, and all the lands called for were made by said deed subject to the claim and mortgage of the plaintiff. When his agent, Thomas Butts, went to the record and reported that he would be safe in taking a mortgage, as there was only a school mortgage on the land, which, we gather from the record, was the mortgage to Caldwell county recited with the plaintiff's in the Merchant deed, John M. Esteb furnished his son the money to pay off and satisfy the school mortgage. But he, also, knew, and was bound to know, that Wm. M. Esteb had purchased the place subject to the plaintiff's mortgage. He testifies that at the time his son William traded for the Merchant place, he knew it was incumbered, and objected to the trade for the reason that he was satisfied, or believed

William would not be able to pay out, and he testified further that he had no reason to believe that his son was paying off the debt, between the time he purchased the place and the date of the mortgage to him; but that, on the other hand, he thought William was running behind-hand on the farm all the while. And further, the evidence shows that the value of the eighty acre tract, where the house stood, and which is involved in this action, was worth $2,500 or $3,000, and that the rest of the land was worth some $10, $15 and $20 per acre, which, for the twenty-seven acres, would not exceed the sum of $400 or $500 at the outside.

We may, also add, that soon after this suit was commenced, J. M. Esteb, in a conversation with Lemuel Dunn, inquired why he had been sued. Dunn told him there was a mistake in Cox's mortgage; and as he held a subsequent mortgage on the same land, and we were asking that the mistake in the Cox mortgage be corrected, it was necessary to make him a party. He replied that William could not pay the Cox mortgage, and he could not pay it, and supposed he would have to lose his debt. The plaintiff, in his evidence, says that he believed J. M. Esteb was present when the deed from Merchant to William and the mortgage from William to him were made. This, however, J. M. Esteb denies, saying that he thought he had been in town that day, but had gone home. On this point, however, the other evidence and circumstances, all taken together, tend very strongly, we think, to corroborate the plaintiff and to show that J. M. Esteb knew all about it. When we consider all the facts and circumstances of this case, and give to them their full probative force and weight, we think they do not merely point to, but reasonably show, the alleged notice of mistake in plaintiff's mortgage. Although the place was incumbered by the mortgage to plaintiff when his son bought it, subject thereto, and he then believed his son would not be able to pay for it, and, although, he did not believe his son had been paying off the debt between the date of his purchase and the mortgage to him, he dis-

covers, that while the school mortgage remains in force and unpaid, the plaintiff's mortgage had, by some means been removed from the most valuable portion of the security, although he believed that the plaintiff's debt was not paid in whole or in part. The land substituted for that, which was the plaintiff's only adequate security, was described and located on a section in which his son never owned any land. It is not material, as we think, that John M. Esteb, in his ignorance of the boundaries of the Merchant place, "did not know that his son did not own any land over in section 20." He knew that the son owned no land except the Merchant place, and he did not know that his son owned an 80 tract in section 20, for such it is admitted, was not the fact. The other parcels of land purchased from Merchant by Wm. Esteb were small, and altogether amounted to 27 acres.

The facts and circumstances were, we think, such as to indicate clearly that the Cox mortgage from Esteb as it stood upon the record, was not in its true condition, and did not represent his actual claim upon the land, and that J. M. Esteb must have been aware of that fact. J. M. Esteb on cross-examination said that, "at the time I took my mortgage I did not ask my son William whether the title was clear or not. I asked him no questions. He said for me to examine the records." W. M. Esteb testified that he gave the mortgage to his father, J. M. Esteb, as a second mortgage, but did not tell him so, and that he did not know of any mistake in the mortgage to Cox until the suit was brought.

When Dunn told J. M. Esteb that there was a mistake in the plaintiff's mortgage from his son William, and that as he held a subsequent mortgage on the same land, it was necessary to make him a party to the suit to correct the mistake, he neither denied the mistake nor expressed any surprise at the statement, and did not pretend that his mortgage was entitled to precedence, as he would have done, if, in fact, he was not aware of the mistake, or sup-

posed that his mortgage had any claim whatever to priority. By his manner and conversation he seems virtually to have conceded the whole case. From this, in connection with all the facts and circumstances in evidence in the cause, we are unable to resist the conviction that the plaintiff's case is fairly made out by ample testimony, and that he is equitably entitled to a judgment as prayed for, correcting said mistake and decreeing priority in favor of his mortgage over that of defendant, J. M. Esteb.

For these reasons the judgment of the circuit court is reversed, and the cause remanded with directions to enter up a judgment and decree in favor of the plaintiff in accordance with this opinion. All concur.