THE CITIZENS' NATIONAL BANK OF ATTICA
*v.* JUDY ET AL.

[No. 17,292.    Filed March 24, 1896.    Motion to modify overruled
December 2, 1896.]

EQUITY.—*Reformation of Mortgage.*—*Mutual Mistake.*—When it appears that by mutual mistake of all the parties to a mortgage as to a matter of fact, the instrument does not express their agreement, a court of equity will reform the instrument by correcting such mistake. *p. 329.*

SAME.—*Reformation of Mortgage.*—*Subsequent Purchasers.*—*Judgment Creditors.*—*Notice.*—A mutual mistake of all the parties to a mortgage may not only be corrected against the mortgagor, but against subsequent purchasers with notice of the facts and against judgment creditors of the mortgagor or such purchaser with notice. *p. 329.*

MORTGAGE.—*Preexisting Debt a Valid Consideration.*—A preexisting debt is a valid consideration for a mortgage, but is not such a consideration as will constitute the mortgagee a *bona fide* purchaser, in the sense to cut off prior equities. *p. 330.*

EQUITY.—*Reformation of Mortgage.*—*Mutual Mistake.*—*Consideration.*—Any consideration that will support a mortgage is sufficient to entitle the mortgagee to maintain an action to correct a mutual mistake in the same against the mortgagor and those holding under him as purchasers with notice and their judgment creditors. *p. 330.*

SAME.—*Reformation of Contracts.*—*When Demand is Necessary.*—Where the only relief sought is the reformation of a deed, mortgage or other contract, a previous demand is essential; but where, in addition to the reformation, a recovery is demanded, no prior demand is necessary. *p. 334.*

SAME.—*Laches.*—While equity aids the vigilant, courts of equity have never fixed any definite or specific period of delay that, like the statute of limitations, will bar the right to equitable relief from fraud or mistake. *p. 334.*

SAME.—*When Contract May Be Reformed.*—Equity will reform a written contract between the parties whenever, through mutual mistake, or mistake of one of the parties accompanied by fraud of the other, it does not, as reduced to writing correctly express the agreement of the parties. *p. 340.*

SAME.—*Action to Reform Written Instrument.*—*Complaint.*—In an action to reform a written instrument the plaintiff must set forth the terms of the original agreement, and also the agreement as re-

duced to writing, and point out with clearness wherein was the mistake.

SAME.—*Reformation of Mortgage.— Mutual Mistake.— Must Have Been Agreement Prior to Execution of Mortgage.*—Where a creditor without any previous agreement, express or implied, prepared a mortgage covering only a part of a debtor's lands, and presented same to such debtor, the creditor believing that all of debtor's lands had been included in the mortgage, the debtor not knowing the intention of the creditor except as revealed by the written instrument, executed and delivered the mortgage, an action for the reformation of the mortgage on the ground of mutual mistake can not be maintained.  *pp. 338–349.*

SPECIAL FINDING.—*When Outside of Issues.*—To the extent that a special finding is outside of the issues in a cause, it is a nullity and can give no support to a conclusion of law thereon.  *p. 349.*

From the Warren Circuit Court. *Affirmed in part and reversed in part.*

*C. V. McAdams,* for appellant.

*J. F. Hanly,* for appellees.

MONKS, J.—Appellant brought this action to foreclose a mortgage given it by appellee, Melville A. Judy. Appellee, Elizabeth Judy, filed a cross-complaint to foreclose a mortgage executed to her by said Melville A.; appellee, the Central State Bank of West Lebanon, filed a cross-complaint asking the correction of a mistake in a mortgage executed to it by said Melville A. Judy and for a foreclosure of the same as corrected.

After issues joined the cause was tried by the court, and by request of appellant a special finding of facts was made and four conclusions of law stated thereon, and at the proper time appellant excepted separately and severally to the first, second and third conclusions of law.

Judgment was rendered by the court in accordance with the finding of facts and conclusions of law. Appellant filed a motion to modify the judgment, which

was overruled. The errors assigned by appellant and not waived are:

1.    The court erred in each of its conclusions of law.

2.    The court erred in overruling appellant's motion to modify the decree and judgment.

The special finding and conclusions of law, so far as necessary to the decision of the questions presented, are as follows:

"First. That on the 15th day of September, 1890, and for a long time prior thereto, the defendant, Melville A. Judy, had been and was then the owner in fee-simple of the following described real estate, situate in Warren county, Indiana: The north one-half (1-2) of section twenty-three (23), the northwest quarter of section twenty-four (24), the east one-half (1-2) of the southwest quarter of section twenty-four (24), and five (5) acres off of the west side of the southwest quarter of the southeast quarter of section twenty-four (24), all in township twenty-two (22) north, of range nine (9) west. Also an undivided interest in the northwest quarter of the southwest quarter of section twenty (20), in township twenty-two (22) north, of range eight (8) west.

"Second. That on the 15th day of September, 1890, the defendant, Melville A. Judy, was indebted to the defendant, the Central State Bank of West Lebanon, Indiana, in the sum of $3,200.00, evidenced by his note then past due; that on said date said Melville A. Judy executed to the Central State Bank aforesaid a note for the sum of $3,200.00, to become due ninety days thereafter, together with interest thereon at eight per cent. after maturity and waiving relief from valuation and appraisement laws and providing for ten per cent. attorneys' fees, and in consideration thereof the old note was delivered to him and the time of payment of such debt thereby extended. Said new

note being the note sued upon by the cross-complainant, the Central State Bank of West Lebanon, Indiana. That on the 14th day of November, 1890, the said Melville A. Judy was indebted to the Central State Bank of West Lebanon, Indiana, in the further sum of $6,682.20, evidenced by his note to such bank then past due; that on said date the said Melville A. Judy executed to such bank his promissory note for said sum, to become due six months thereafter, together with eight per cent. interest thereon after maturity and providing for ten per cent. attorney's fees, waiving relief from valuation and appraisement laws; that in consideration of the execution of such note the said old note was surrendered by such bank and the time for payment of such debt was thereby extended for a period of six months from said November 14, 1890. Said new note being the second note sued upon in this case by the cross-complainant, the Central Bank aforesaid; that there is now due on said two notes sued upon by the Central State Bank of West Lebanon, Indiana, the sum of $9,313.68, principal and interest, and the sum of $931.36 attorney's fees, making a total indebtedness on account of such notes in the sum of $10,245.04.

"Third. That on the 17th day of November, 1890, Frank C. Fleming, the acting cashier of the Central State Bank of West Lebanon, Indiana, prepared a real estate mortgage, securing the payment of the notes sued upon in this cause by said bank and described in second finding of the court; that on said date said cashier, with a notary public, went to the residence of the defendant, Melville A. Judy, about four miles in the country, for the purpose of having such mortgage executed by said defendant; that on arriving there the mortgage was tendered to said defendant and he was requested by such cashier to execute the same, for

the purpose of securing said notes; that after said defendant had read and examined such mortgage, he duly executed the same, before such notary, and delivered it to said cashier; that such mortgage contains a description of the following described real estate, situate in Warren county, Indiana: The northwest quarter and the west one-half (1-2) of the northeast quarter of section twenty-three (23), also the east one-half (1-2) of the northwest quarter, and the southwest quarter of the southwest quarter of section twenty-four (24), all in township twenty-two (22) north, of range nine (9) west. The court further finds that such mortgage was duly recorded in the recorder's office of Warren county, Indiana, on December 9, 1890. The court further finds that there was no agreement between the Central State Bank of West Lebanon, Indiana, and the defendant, Melville A. Judy, that a mortgage should be given by him on his real estate to secure the notes sued upon by such bank, prior to the execution of such mortgage; that at the time such mortgage was executed there was no agreement between said bank and said Judy as to what lands should be embraced in such mortgage, and that at no time prior to the execution of such mortgage, nor at any time, was anything said, by the cashier of said bank or said Judy, as to what lands should be embraced in such mortgage; that the cashier of said bank, when he drafted such mortgage, intended to embrace therein all the lands then owned by defendant Judy, and above set forth in the first finding of the court, and that the officers of said bank supposed and understood that the mortgage so executed did embrace all such lands, until in January, 1893, when they learned that a mistake had been made therein; that the defendant, Judy, at the time he executed such

mortgage supposed the same contained a description of all the real estate as above set forth in the first finding of the court, and that the defendant, Judy, intended to embrace and include and describe all of said lands in such mortgage.

"Fifth. That on December 21, 1892, the defendant, Melville A. Judy, was indebted to the Citizens' National Bank of Attica, Indiana, for money borrowed, in the sum of more than $5,000.00, evidenced by his note therefor then past due; that such debt had been in existence for a period prior to September 15, 1890, and had been renewed from time to time by the payment of interest and the execution of new notes; that on said December 21, 1892, the defendant, Melville A. Judy, executed to the plaintiff his note for the sum of $4,500.00, to become due in six months thereafter with eight per cent. interest thereon after maturity and ten per cent. attorney's fees and waiving relief from valuation or appraisement laws; that in consideration of the extension of the time for the payment of that portion of such debt, evidenced by such new note, the defendant, Melville A. Judy, on said date paid to the plaintiff the residue of such old debt then due and executed and delivered to the plaintiff, for the purpose of securing such note of $4,500.00, then made a mortgage on the following described real estate, situate in Warren county, Indiana: The east one-half (1-2) of the northeast quarter of section twenty-three (23), the northwest quarter and the east half (1-2) of the southwest quarter, and five (5) acres off of the west side of the southwest quarter of the southeast quarter of section twenty-four (24), all in township twenty-two (22), north of range nine (9) west. Also his interest in the northwest quarter of the southwest quarter of section twenty (20), in township twenty-two (22) north, of range eight (8) west; that such mortgage was duly re-

corded in the office of the county recorder of Warren county on December 21, 1892; that the renewal note so executed on December 21, 1892, for $4,500.00, is the note sued upon by the plaintiff in this cause, and that there is now due and unpaid on the same the sum of $4,782.00 principal and interest, and the further sum of $478.00 attorney's fees, making a total indebtedness now due on such note of $5,260.00.

"Sixth. That the Central State Bank of West Lebanon, Indiana, in January, 1893, acquired notice and knowledge of the execution and delivery by the defendant, Melville A. Judy, to the plaintiff of the mortgage sued upon by the plaintiff in this cause; that said defendant, the Central State Bank, did not at any time thereafter give to the plaintiff any notice that it claimed to have a mortgage on all the real estate of the defendant, Judy, and did not at any time take any steps to correct the mistake claimed to exist in its mortgage until it filed its cross-complaint in this cause on December 27, 1893."

Conclusions of law: "1st. That the cross-complainant, the Central State Bank of West Lebanon, Indiana, is entitled to judgment against the defendant, Judy, for the sum of $10,245.04; that such cross-complainant is entitled, as against the plaintiff and all the defendants excepting Elizabeth Judy, to have its mortgage corrected and reformed, and that the lien of the mortgage of said cross-complainant when reformed is the first and prior lien upon all of the lands described in the first finding of the court excepting the east one-half (1-2) of the northeast quarter of section twenty-three (23), and the west one-half (1-2) of the northwest quarter and the east one-half (1-2) of the southwest quarter of section twenty-four (24), all in township twenty-two (22) north, of range nine (9) west, in Warren county, Indiana, and that such cross-com-

plainant is entitled to have its mortgage foreclosed as corrected.

"Third.   That the plaintiff, the Citizens' National Bank of Attica, Indiana, is entitled to judgment against the defendant, Melville A. Judy, for the sum of $5,260.00; that the lien of the plaintiff's mortgage is junior and subsequent to the lien of the mortgages executed to the Central State Bank and Elizabeth Judy upon the lands therein described, after the mortgage to the Central State Bank is reformed; that the plaintiff is entitled to have its mortgage foreclosed."

It is settled law that when it appears that by the mutual mistake of all the parties to a mortgage, as to a matter of fact, the instrument does not express their agreement, a court of equity will reform the instrument by correcting such mistake. *Parish* v. *Camplin*, 139 Ind. 1; *Walls* v. *State ex rel. Aud.*, 140 Ind. 16; *Board, etc.*, v. *Owens*, 138 Ind. 183; *Easter* v. *Severin*, 78 Ind. 540; *Sparta School Tp.* v. *Mendell*, 138 Ind. 188; *Dutch* v. *Boyd*, 81 Ind. 146, 150, and cases .cited.

Such mistake may not only be corrected against the mortgagor, but against subsequent purchasers with notice of the facts and against judgment creditors of the mortgagor or such purchaser with notice. *White* v. *Wilson*, 6 Blackf. 448, and authorities cited, 39 Am. Dec. 437; *Sample* v. *Rowe*, 24 Ind. 208, 215; *Busenbarke* v. *Ramey*, 53 Ind. 499, 501; *Figart* v. *Halderman*, 75 Ind. 564, 568; *Boyd* v. *Anderson*, 102 Ind. 217, 220, and cases cited; *Shirk* v. *Thomas,* 121 Ind. 147, 150, 151; *Gillespie* v. *Moon*, 2 Johns. Ch. 585, 7 Am. Dec. 559, 565.

Appellant, however, insists that if it was a purchaser with notice of the claims of the appellee bank, yet the Central State Bank was not entitled to have its mort-

gage corrected and reformed, for the reason that it was given for a preexisting debt.

The second special finding, as claimed by the appellant, shows that the mortgage was given to the appellee bank to secure a preexisting debt, and for no other consideration whatever.

It is the law in this State that a preexisting debt is a valid consideration for a mortgage, and that such mortgage can be enforced. *Wert* v. *Naylor*, 93 Ind. 431; *Louthain* v. *Miller*, 85 Ind. 161; *Hewitt* v. *Powers*, 84 Ind. 295; *Babcock* v. *Jordan*, 24 Ind. 14; *Work* v. *Brayton*, 5 Ind. 396; *Shirk* v. *Thomas*, *supra;* Jones on Chat. Mortg., section 81, and cases cited in note 5; 1 Cobbey on Chat. Mortg., section 126.

A preexisting debt, however, is not such a consideration as will constitute the mortgagee a *bona fide* purchaser, in the sense to cut off prior equities, but it is a valuable consideration in the sense that it will support a mortgage or other contract. *Hewitt* v. *Powers, supra; Orb* v. *Coapstick*, 136 Ind. 313; *Petry* v. *Ambrosher*, 100 Ind. 510, and cases cited; *Tarkington* v. *Purvis*, 128 Ind. 182, 9 L. R. A. 607.

It seems clear that any consideration that would support a mortgage would be sufficient to entitle the mortgagee to maintain an action to correct a mutual mistake in the same against the mortgagor and those holding under him as purchasers with notice and their judgment creditors. *Welton* v. *Tizzard*, 15 Ia. 495; *Rhodes* v. *Outcalt*, 48 Mo. 367; *Brocking* v. *Straat*, 17 Mo. App. 296; *Partridge* v. *Smith*, 2 Biss. C. C. 183; *Baker* v. *Pyatt*, 108 Ind. 61; 15 Am. and Eng. Ency. of Law, 681, and note 1; 1 Pingrey on Mortgages, section 530.

In *Welton* v. *Tizzard, supra,* the court held that a mortgage given to secure a preexisting debt, and sup-

ported by no new consideration, could be corrected as
against the mortgagor and subsequent judgment cred-
itors.  The court, by Dillon, J., said: "The plaintiff is
confessedly first in point of time.  His is the elder
right.  The debtor, for a valid consideration, agreed
to execute a mortgage (for the deed of trust may, for
the purposes of this suit, and for the convenience sake,
be so called), on lands which he owned, not on lands
which he did not own.  That is, he agreed, and under-
took, though defectively, in the eyes of a court of law,
to bind these lands of his, to set them apart, specific-
ally to appropriate them to the plaintiff.  Now, in
equity, he did thus bind, appropriate, and set them
apart.  Therefore, in equity, which deems as done that
which the party has agreed to do, the plaintiff had not
only a mortgage, but a mortgage on the right land—
on the land intended.  In equity, the plaintiff did not,
as contended, simply attempt to get a lien, but he
actually secured a lien on the parcels designed to be
conveyed to him; and not a lien, merely, but his rights
were such that he  *  *  would be regarded by the de-
cisions of other courts in the light of a purchaser.
*Porter* v. *Green*, 4 Ia. 571; *Seevers* v. *Delashmutt*, 11 Ia.
174.  The debtor is bound, in conscience, to correct
the mistake.  His obligation to correct it was such an
equity as would bind his heirs, voluntary grantees, or
purchasers with notice.  Such are the plaintiff's rights.
Now, the defendant is subsequent in point of time.
*  *  *  He comes in under the debtor, that is, under
one who in conscience is bound, and who in equity
would be compelled to rectify the error in the antece-
dent conveyance."

*Rhodes* v. *Outcalt, supra*, was an action brought by a
mortgagee against the mortgagor and a subsequent
purchaser with notice, to correct a mistake in the de-
scriptive part of a mortgage, given to secure a pre-

existing debt, and the court held that such mortgagee was entitled to a reformation of the mortgage against the mortgagor and the said subsequent purchaser with notice. This case was followed by *Brockling* v. *Straat, supra.*

In *Baker* v. *Pyatt, supra,* this court held that equity will not intervene for the reformation of a deed which is purely voluntary; but a deed by a father to a son in consideration of services already rendered and love and affection may be reformed. The court, by Zollars, J., said: "It is settled that equity will not intervene for the reformation of a deed which is purely voluntary, resting upon no valuable consideration whatever. * * On the other hand, if there is any valuable consideration, no difference how small, supplemented by the consideration of love and affection, a mistake in a deed may be reformed. *Mason* v. *Moulden,* 58 Ind. 1. In that case the consideration was love and affection and $1.00. It was said: 'Elizabeth was a purchaser for a valuable consideration, and mere inadequacy of consideration is no ground for withholding relief by way of reforming the deed, and thus giving her what she bought, and what her vendor intended to convey, and would, but for the mistake, have conveyed.' * * * * Both the special finding of facts and the evidence show that the services rendered by appellee to his father were a part of the consideration for the conveyance to him. It is found that the services were not rendered by appellee with a view to any particular or specific compensation, other than as the father might deem proper. * * The father recognized the fact that appellee was entitled to some compensation for his services, and carried that recognition into the deed, and made the services a part of the consideration for the conveyance. * * * There was

a mutual mistake, such as a court of equity, under all the circumstances of this case, will correct."

The case last quoted from certainly settles the proposition that a preexisting debt is sufficient consideration to entitle the grantee in a deed to correct a mutual mistake in the same as against the grantor and those claiming under him with notice. *Comstock* v. *Coon*, 135 Ind. 640, fully sustains the same doctrine. Yet this court held, in *Petry* v. *Ambrosher*, *supra*, that a person who receives a conveyance of real estate in payment of a preexisting debt, and for no other consideration is not a *bona fide* purchaser for a valuable consideration, in such sense as to be entitled to defeat a vendor's lien for the purchase-money of the land. This court, by Elliott, Judge, said: "A precedent debt is a consideration sufficient to support a contract. *Bowling* v. *Howell*, 93 Ind. 329, see p. 331; *Hewitt* v. *Powers*, 84 Ind. 295. It is not, however, such a consideration as will constitute a person a *bona fide* purchaser with rights superior to those of the unpaid vendor of the land."

In *Bowling* v. *Howell*, *supra*, this court said: "A precedent debt is unquestionably a valuable consideration for a contract, but is not such a consideration as will make a grantee or assignee a *bona fide* purchaser against prior equities. * * * As against one who has no prior equity, a precedent debt will support a contract otherwise valid."

The cases cited settle the proposition that it is not necessary that one be a *bona fide* purchaser in such sense as will cut off prior equities, in order to entitle him to successfully prosecute an action to correct a mutual mistake in a written contract.

It must be remembered that appellee bank does not claim to be a *bona fide* purchaser for a valuable consideration and thus seek to cut off the prior equities

of any one, but is attempting to correct an alleged mutual mistake in a mortgage as against a mortgagor and a subsequent purchaser with notice. It follows from what we have said and the authorities cited that the preexisting debt which the mortgage to appellee bank was given to secure, was sufficient consideration to entitle said appellee to a correction of the alleged mistake in said mortgage as against appellant, if the case were otherwise made out.

The next objection urged by appellant is stated thus: "It is nowhere shown in the findings of the court that the Central State Bank ever demanded a correction of the alleged mistake in its mortgage, and that such demand was met by a refusal. It is necessary in such suits to allege a demand for and a refusal to correct the alleged mistake. It is necessary to allege these things in the bill."

Appellee bank was not bound to demand a correction or reformation of the mortgage before filing the cross-complaint. The rule is that when the only relief sought is the reformation of deed or other contract, a previous demand is essential, but where, in addition to the reformation, a recovery is demanded, no prior demand is necessary. *Walls* v. *State, supra; Sparta School Tp. Co.* v. *Mendell, supra,* on page 195; *Axtel* v. *Chase,* 83 Ind. 546, 556; *Lucas* v. *Labertue,* 88 Ind. 277; Thornton Ann. Pr. Code, section 279.

Appellant insists that the delay of eleven months, as shown by the sixth special finding, from the time the Central State Bank learned of the mistake in its mortgage until it filed its cross-complaint, was such laches as will prevent the correction of the mistake in said mortgage as against appellant.

It is a well settled principle of equity jurisprudence that "Equity aids the vigilant, not those who slumber on their rights." 1 Pomeroy Eq. Jur., section 418.

Courts of equity have never fixed any definite or specific period of delay that, like the statute of limitations, will bar the right to equitable relief from fraud or mistake, and it would be impossible for them to do so. In *Lindsay Petroleum Co.* v. *Hurd*, L. R. 5, P. C. 221, Lord Selborne, speaking of the doctrine of laches, said: "The doctrine of laches in courts of equity is not an arbitrary or technical doctrine. Where it would be practically unjust to give a remedy, either because the party has, by his conduct, done that which might fairly be regarded as equivalent to a waiver of it, or where by his conduct and neglect he has, though perhaps not waiving that remedy, yet put the other party in a situation in which it would not be reasonable to place him if the remedy were afterwards to be asserted, in either of these cases, lapse of time and delay are most material. But in every case, if an argument against relief, which would otherwise be just, is founded upon mere delay, that delay of course not amounting to a bar by any statute of limitations, the validity of that defense must be tried upon principles substantially equitable. Two circumstances, always important in such cases, are, the length of the delay and the nature of the acts done during the interval, which might affect either party and cause a balance of justice or injustice in taking one course or the other." It is evident, therefore, that what would be fatal laches in one case would not bar a recovery in another. In this case, the rights of no innocent third parties have intervened. Appellant, as stated in the eleventh finding, took its mortgage with notice of the claims of appellee bank, and if by accepting the mortgage and extending the same on its debt its hands were tied, the same was done with full knowledge of the claims of appellee bank, and it has no just grounds of complaint. Besides, the appellee bank did not learn of the alleged

mistake until long after appellant took said mortgage. The relative position of the parties has not changed during the interval between the time appellee bank learned of the alleged mistake in its mortgage and the filing of its cross-complaint. No right of appellant has been injuriously affected by the delay.

We do not think the appellee bank has been guilty of such laches in this case as will deprive it of its right to a reformation of said mortgage, if it is otherwise entitled thereto.

The next contention of appellant is stated in its brief as follows: "The next question presented which arises principally on the third finding, is whether or not there ever was any contract between the Central State Bank and Judy other than the one expressed in the mortgage sought to be corrected. We claim there is no contract except that which is expressed in the mortgage, and that the only evidence of that contract, as shown by the findings, is the terms of the mortgage itself. It was alleged in the cross-complaint of the Central State Bank, that there was a contract that the lands of Judy not embraced in the mortgage were to have been included therein. Unless there was such a contract the court cannot find a mistake and decree its correction."

The allegation in said appellee's cross-complaint in regard to such contract is as follows:

"That on the said 15th day of September, 1890, and continuously thereafter until the present date, said defendant, Melville A. Judy, was and has been the owner in fee-simple of the following described real estate, situate in Warren county, in the State of Indiana, to-wit: The east half of the northeast quarter of section twenty-three (23). Also the northwest quarter of section twenty-four (24), and the east half of the southwest quarter of section twenty-four (24), and five

acres off of the west side of the southwest quarter of the southeast quarter of section 24, all in township 22 north, range 9 west, containing three hundred and twenty-five acres; that on the said 15th day of September, 1890, said defendant, Melville A. Judy, in consideration of the sum of money named in said first described note, and for the further consideration of the sum mentioned in said last described note, and in consideration that the time of the payment of the said sums of money, which were then due, for the time indicated in said notes should be extended, agreed with this cross-complainant to execute and deliver to it for the purpose of securing the payment of the notes aforesaid, a mortgage upon all of the aforesaid real estate; that afterwards, to-wit: on the 17th day of November, 1890, said defendant, Melville A. Judy, pursuant to said agreement, and for the purpose of securing the payment of the notes aforesaid, made, executed and delivered to this cross-complainant, a mortgage upon all the aforesaid real estate, as he and said cross-complainant, at the time supposed, understood and believed; that it was the intention of said defendant, Melville A. Judy, and said cross-complainant that said mortgage should contain a description of all the aforesaid real estate, pursuant to the agreement aforesaid. And when said mortgage was executed and delivered each supposed and believed that the description of all the lands aforesaid had been duly inserted therein; that the scrivener who drew said mortgage, made a mistake, in this, he described said lands as 'The northwest quarter of section 23, township 22, range 9 west, containing 160 acres; also the west half of the northeast quarter of section 23, township 22 north, range 9 west, containing 80 acres; also the east half of the northwest quarter of section

24, township 22 north, range 9 west, containing 80 acres; also the southwest quarter of the southwest quarter of section 24, township 22 north, range 9 west.' Instead of describing them as the northwest quarter of section 24; the east half of the northeast quarter of section 23; the east half of the southwest quarter of section 24; and five acres off of the west side of the southwest quarter of the southeast of section 24, all in township 22 north, range 9 west, as it was desired, intended and understood by and between said defendant, Melville A. Judy, and his cross-complainant, that said lands should be described; that said mistaken and erroneous description was inserted in said mortgage, as hereinbefore described, by the mutual mistake, oversight and inadvertence of said scrivener, said defendant, Melville A. Judy, and this cross-complainant, and that because of said mutual mistake said mortgage wholly fails to truthfully set forth the intention of said parties to their said agreement; that at the time said mortgage was executed said Melville A. Judy did not own the lands therein described, except the east half of the northwest quarter of section 24, township twenty-two north, range nine west."

There is nothing in the special finding which sustains the allegation in the said cross-complaint that Judy agreed with the appellee bank to execute a mortgage to said bank on the real estate alleged, to secure said notes, and that pursuant to said agreement he executed the mortgage described in said cross-complaint.

The facts found in the third finding are, in substance, that the cashier of the appellee bank, without any previous arrangement, understanding, promise, contract or agreement, express or implied, with Judy, and without his knowledge or assistance, prepared the mortgage to said bank and took the same, with a

notary public, to Judy, at his residence in the country, and requested him to execute the same for the purpose of securing the notes to said bank, described in the mortgage. Judy read the mortgage, signed and acknowledged the same before the officer, and delivered it to the cashier; that there never was any agreement at any time between appellee bank and Judy that any mortgage should be given by him on his real estate to secure the notes sued upon by said bank; that there was no agreement at any time as to what lands should be embraced in said mortgage, and that at no time was anything said by said cashier or Judy as to what lands should be embraced in said mortgage.

It is clear from the finding that there was no contract, express or implied, by the words or acts, or both, except the mortgage itself. It is true, as insisted by appellee bank, that the court found that the cashier intended, when he drafted the mortgage, to embrace therein all the lands then owned by Judy, set out in the first finding, and that the officers of the bank supposed and understood that the mortgage so executed did embrace all such lands, and that said Judy, at the time he executed the mortgage, supposed the same contained a description of all his real estate described in the first finding of the court, and that he intended to embrace and include and describe all of said lands in such mortgage. The finding shows that the intention and supposition and understanding of the officers of said bank as to what lands of Judy were embraced in the mortgage were unknown to Judy, except as he learned the same from the mortgage itself, and that the intention and supposition of Judy as to what lands were to be embraced in the mortgage were unknown to the bank and its officers.

The mere fact that the cashier of said bank intended to include all the real estate of Judy in the

mortgage, and the officers of the bank supposed and understood that the mortgage so executed did embrace all such lands, such belief, supposition and understanding not being known to Judy when he executed the mortgage would give the bank no right to have such mortgage corrected so as to describe all of such lands; neither would the mere fact that Judy intended to execute a mortgage on all such real estate, and supposed he had done so, such intent and supposition being unknown to the officers of said bank when said mortgage was executed, give any such right. If there was no contract, express or implied, that the mortgage should include all of Judy's real estate, as alleged in the cross-complaint, the mere fact that each intended to include all such land in the mortgage, and believed it had been done, neither party having any knowledge of the intent or belief of the other, when in fact the same had not been described, would not entitle either party to reform such mortgage against the other, for the reason that there was no contract, express or implied, as to what real estate should be included, nor any arrangement or understanding, except as shown by the mortgage itself.

Equity will reform a written contract between the parties whenever, through mutual mistake, or mistake of one of the parties accompanied by the fraud of the other, it does not, as reduced to writing, correctly express the agreement of the parties. *Gray* v. *Woods*, 4 Blackf. 432; *Hileman* v. *Wright*, 9 Ind. 126; *Comer* v. *Himes*, 49 Ind. 482, 490; *Jones* v. *Sweet*, 77 Ind. 187; *Sparta School Tp.* v. *Mendell, supra; Monroe* v. *Skelton*, 36 Ind. 302; *Board, etc.,* v. *Owens, supra; Hunt* v. *Rousmaniere,* 1 Peters (U. S.) 1; *Walden* v. *Skinner*, 101 U. S. 577; *Scales* v. *Ashbrook*, 1 Metc. (Ky.) 358; *German Nat'l Bank* v. *Louisville Butchers', etc., Co.* (Ky.), 29 S. W. 882; *Sawyer* v. *Hovey,* 85

Mass, 331; *Clark* v. *Higgins*, 132 Mass. 586; *Stock-bridge Iron Co.* v. *Hudson Iron Co.*, 102 Mass. 45; *Miller* v. *Lord*, 11 Pick. 11; *Neininger* v. *State*, 50 O. St. 394, 40 Am. St. 674, 34 N. E. 633; *Coles* v. *Bowne*, 10 Paige (N. Y.) 526; *Jackson* v. *Andrews*, 59 N. Y. 244; *Smith* v. *Jordan*, 13 Minn. 264, 97 Am. Dec. 232; *Shay* v. *Pettes*, 35 Ill. 360; *Wemple* v. *Stewart*, 22 Barb. 154; Chitty on Cont. (11 Am. ed.), p. 1028, 12 Eng. ed., p. 864; 1 Wharton on Cont., sections 205, 206, 207; Fry on Specific Performance (3d Eng. ed.), sections 766, 791, 3d Am. ed., sections 754, 758; Pomeroy on Cont., sections 248, 249; Waterman on Specific Performance, sections 368, 369; 5 Lawson on Rights and Remedies, sections 2337, 2339; Wald's Pollock on Contracts (2d ed.), pp. 470-478; 2 Warvelle on Vendors, section 11, pp. 800, 801, section 15, pp. 804, 805; Pomeroy on Eq. Jur., sections 845, 853, 859, 1376; Tiedeman's Eq. Jur., section 507; 20 Am. and Eng. Ency. of Law, p. 714; Kerr on Fraud and Mistake, 409-424.

The rule is, that in an action to reform a written instrument the plaintiff must set forth the terms of the original agreement, and also the agreement as reduced to writing, and point out with clearness wherein there was a mistake. *Thompson Scale Mfg. Co.* v. *Osgood*, 26 Conn. 16; *Hyland* v. *Hyland*, 19 Or. 51, 23 Pac. 811; *Meier* v. *Kelly*, 20 Or. 86, 25 Pac. 73; *Lewis* v. *Lewis*, 5 Or. 169; 20 Am. and Eng. Ency. of Law, 720; 1 Pingrey on Mortgages, section 270; 2 Warvelle on Vendors, p. 801.

It is said in Pomeroy's Eq. Jur., section 1376: "Equity has jurisdiction to reform written instruments in but two well defined cases: (1) Where there is a mutual mistake,—that is, where there has been a meeting of minds,—an agreement actually entered into, but the contract, deed, settlement, or other instrument, in its written form, does not express what

was really intended by the parties thereto; and (2) where there has been a mistake of one party, accompanied by fraud or other inequitable conduct of the remaining parties. In such cases the instrument may be made to conform to the agreement or transaction entered into, according to the intention of the parties."

In Tiedeman's Eq. Jur., section 507, it is said: "A legal instrument is a proper subject for reformation or re-execution, whenever the instrument itself does not show and reproduce the actual contract of the parties; but it is only possible for a written contract to be reformed, when the parties have actually made a contract which is different in its terms from the contract which had been reduced to writing. In other words, in order that an instrument may be reformed, the error or mistake, which has been committed in reducing the contract to writing, must be either a mutual mistake of both parties, or it must be a mistake on the part of one of them, accompanied by the fraud of the other party."

It was said by the Supreme Court of the United States, in *Walden* v. *Skinner, supra:* "That where an instrument is drawn and executed that professes or is intended to carry into execution an agreement, which is in writing or by parol, previously made between the parties, but which by mistake of the draftsman, either as to fact or law, does not fulfill, or which violates the manifest intention of the parties to the agreement, equity will correct the mistake so as to produce a conformity of the instrument to the agreement. The reason of the rule being that the execution of agreements fairly and legally made is one of the peculiar branches of. equity jurisdiction, and if the instrument intended to execute the agreement be from any cause insufficient for that purpose, the agreement remains as much unexecuted as if the party had re-

fused altogether to comply with his engagement, and a court of equity will, in the exercise of its acknowledged jurisdiction, afford relief in the one case as well as in the other, by compelling the delinquent party to perform his undertaking according to the terms of it and the manifest intention of the parties."

In *Shay* v. *Pettes, supra,* the court said: "From the evidence we are unable to find an agreement between the parties that the mortgage should include all the land sold, and that one of the parcels was omitted by mistake. We have no evidence by whom the mortgage was drafted, or under what circumstances it was executed. * Under such circumstances the written instrument must be the criterion by which the rights of the parties are to be determined."

In *Miller* v. *Lord,* 11 Pick., at p. 24, the court said: "It is true that the parties declare that they understood the agreement differently at the time it was made, but it does not appear that the construction which either party put on the agreement was made known to the other party until after the agreement was concluded; both parties therefore are bound by the terms of the agreement, and it is to be construed by the court."

It is said in Wharton's Law of Contracts, Vol. 1, section 207, on p. 300, that: "There can be no rectification, however, unless it is proved that both parties were mistaken in the use of the terms to be corrected, and that both parties agreed to the contract sought to be substituted for that to be set aside. In each term of the contract to be thus set up, it must be proved that the parties concurred. To a contract, concurrence of minds is essential, and no substitution of an amended contract can be made without showing that the parties concurred in the amended contract. This is what is meant by the expression frequently used,

that to justify a decree of rectification concurrent mistake, or mistake of both parties, must be proved. On proof of mistake by one party, rescission may be decreed. But rectification will not be decreed without proving that both parties had originally agreed to the terms inserted, and that the mistake was bilateral. 'The court cannot correct an instrument except upon a clear mistake common to all.' "

In 2 Chitty on Cont. (11 Am. ed.), by Perkins, p. 1028, it is said: "Upon sufficient proof of the mistake and of the agreement really made, a court of equity exercises a jurisdiction to rectify the contract, and to enforce it in its corrected state. In the exercise of this jurisdiction a court of equity necessarily receives evidence of the real agreement in variation of the terms of the written agreement.

" 'In the ordinary case of rectifying mistakes in an instrument where it is sought to alter the instrument in any prescribed or definite mode, the mistake must be the concurrent mistake of all the parties. In such cases it is necessary to prove not only that there has been a mistake in what has been done, but also what was intended to be done, in order that the instrument may be set right according to what was really so intended; for in such case, if the parties took different views of what was intended, there would be no contract between them which could be carried into effect by rectifying the instrument.' " *Ball* v. *Storie*, 1 Sim. & Stu. 210, 219; *Bently* v. *Mackay*, 31 L. J. C. 697, 709; *Murray* v. *Parker*, 19 Beav. 305, 308.

The rule is thus stated in Chitty's Contracts (12 Eng. ed.), at p. 864: "It has long been an established rule of equity, that where a contract has by reason of a mistake common to the contracting parties been drawn up to an effect militating against the intentions of both, the court will rectify the contract so as

to carry out such intentions. It is essential that the extent of the rectification should be clearly ascertained and defined by evidence contemporaneous with or anterior to the contract. * * It is necessary for a plaintiff to show that there was an actually concluded contract which, is inaccurately represented to be the instrument purporting to be made in pursuance of it. 'Courts of equity do not rectify contracts; they may and do rectify instruments purporting to have been made in pursuance of the terms of contracts.'" Seaton on Decrees, Vol. 2, pt. 1, p. 1342; *MacKenzie* v. *Coulson*, L. R. Eq. 8, 368; *Bentley* v. *Mackey, supra.*

Where a document has been signed as an agreement in a common mistake as to its contents, and it appears that no real agreement was come to between the parties according to which it might be rectified, the court will set it aside. *Calverley* v. *Williams*, 1 Ves. Jr. 210; *Price* v. *Ley*, 32 L. J. C. 530; *Fowler* v. *Scottish Life Ins. Soc.*, 28 L. J. C. 225; 2 Chitty on Cont. (11 Am. ed.), 1029; Leake on Cont. 175.

"Where neither party to the contract is in error as to the matters in respect of which they are contracting, and there is an actually concluded contract, but there is an error common to both the parties in the reduction of the contract into writing, there the court interferes for the purpose of reforming the contract." Fry on Specific Performance (3d Eng. ed.), section 766 (3d Am. ed.), section 754; Pomeroy on Cont., sections 248, 249; Waterman on Specific Performance, sections 368, 369.

It must be a mistake in reducing the actual agreement of the parties to writing. Waterman on Specific Performance, section 368.

"It follows, from the nature of the jurisdiction, that there can be no rectification where there is not a prior actual contract by which to rectify the written docu-

ment." Fry on Specific Performance (3d Eng. ed.), section 791, p. 366 (3d Am. ed.), section 758, and notes on p. 397; *Wemple* v. *Stuart, supra.*

In *Murray* v. *Parker, supra,* Lord Romily, M. R., said: "In matters of mistake, the court undoubtedly has jurisdiction, and though this jurisdiction is to be exercised with great caution and care, still it is to be exercised, in all cases, where a deed, as executed, is not according to the real agreement between the parties. In all cases, the real agreement must be established by evidence, whether parol or written;  *   *   if there be a previous agreement in writing, which is unambiguous, the deed will be reformed accordingly."

It is indispensable that the evidence should amount to proof of a mistake common to all the parties, a common intention different from the expressed intention and a common mistaken supposition that it is rightly expressed. *Bentley* v. *Mackay, supra.*

It was held by Lord Hardwicke, in *Henkle* v. *Royal Exch., etc., Co.,* 1 Ves. Sr. 318, that there must be clear proof of a real agreement of both parties different from the expressed agreement, and that a different intention or mistake of one party alone is no ground to vary the agreement expressed in writing.

In discussing these questions, the author of Warvelle on Vendors says (section 11, pp. 800, 801): "An action may be maintained in equity for the rescission of a contract upon the ground of mistake as to a material fact by one of the parties only, yet it must be evident that, if the minds of the parties to a contract did not meet, that if one understood the matter as expressed in the agreement and the other differently, there can be no reformation, from the very nature of things, because, nothing having been agreed upon in the minds of the parties, there is nothing to reform.

Therefore, to authorize a reformation the misunderstanding must have been mutual; and a rectification will only be permitted where both parties have executed the instrument under a common mistake, and have done what neither of them intended. In every case, it must clearly and satisfactorily appear that the precise terms of the contract had been orally agreed upon, and that the writing afterwards signed fails to be, as it was intended, an execution of such previous agreement, but on the contrary, expresses a different contract, and that this is the result of mutual mistake. But if there had been a misunderstanding between the parties during the negotiations, and if the parties understood the agreement differently, yet neither made known to the other his construction of it, and it is afterwards reduced to writing and duly executed, they are both bound, in equity as well as at law, by the terms of the written instrument.

"A party who files a bill to correct a mistake in a written agreement, in a case where the court has the power to make a correction therein, must not only state, in his bill, the agreement as it ought to have been reduced to writing, but also the substance of the written agreement itself. The party alleging the mistake holds the affirmative, and must satisfy the court beyond a reasonable doubt that the agreement, as he claims it to have been made, was in fact made between the parties, and that a mistake has occurred in reducing such agreement to writing."

The appellant bank, however, insists that this court has decided that it was not necessary that there should have been a prior agreement, or even an expressed intention, citing *Calton* v. *Lewis*, 119 Ind. 181, at p. 183. In that case this court said: "It is an error to suppose that a written instrument can only be corrected where the mistake results from the omission or

insertion of words different from those agreed upon, or contrary to the expressed intention of the parties. It is a mistake of fact when, through ignorance, inadvertence, negligence or otherwise, the description in a deed does not in fact embrace the land which the parties intended it should, and which they supposed it did. The inquiry in such a case must be, what was the subject of the contract, not what words were agreed upon as descriptive of the land. *Baker* v. *Pyatt*, 108 Ind. 61; *Keister* v. *Myers*, 115 Ind. 312."

In that case it was sought to reform the deed by inserting the name of the state in which the land was alleged to be situate. The language of the court was in response to the contention of counsel that the deed could only be corrected by showing that the name of the state had been agreed upon as a part of the description of the land, citing *Nelson* v. *Davis*, 40 Ind. 366; *Heavenridge* v. *Mondy*, 49 Ind. 434. The court correctly said that the question was "what was the subject of the contract, not what words were agreed upon as descriptive of the land." The contract referred to was not the deed, but the contract which preceded the deed and under which it was executed.

There is nothing in the special finding from which we can determine what real estate was the subject of the contract except the description in the mortgage itself.

It follows that the court erred in its first and third conclusions of law so far as the rights of appellant and the appellee bank were stated concerning their respective mortgages.

Said conclusions of law were erroneous for another reason. It will be observed that the court states in the first finding that Judy owned 565 acres of land in sections 23 and 24, and an undivided interest in 40 acres in section 20, while the cross-complaint alleges

that he owned 325 acres in sections 23 and 24, and that the agreement made between appellee bank and Judy, that he, Judy, would give a mortgage of the aforesaid 325 acres in sections 23 and 24 and described in the cross-complaint to secure the notes held by the bank. The first conclusion of law is, that appellee bank is entitled to have its mortgage reformed so as to include all the real estate described in the first finding of the court, which is five hundred and sixty-five acres and an undivided interest in forty acres in section 20, notwithstanding the cross-complaint alleged that it was the agreement of the parties to the mortgage only to include 325 acres in sections 23 and 24, and made no mention of the interest of Judy in the forty acres in section 20 .

The finding of the court, therefore, that Judy and the officers of the bank intended to include in said mortgage all the real estate described in the first finding was, as to the tract of forty acres in section 20 and the northwest quarter and west half of the northeast quarter of section 23, outside the issues in the cause. To the same extent the first conclusion of law was outside the issues in the case.

To the extent a special finding is outside the issues in a cause it is a nullity and can give no support to a conclusion of law thereon. *Burton, Rec.,* v. *Morrow,* 133 Ind. 221, 226.

Appellant's mortgage conveyed Judy's interest in the forty-acre tract in section 20, and on the finding of the court, considered with respect to the issues in the cause, was the only mortgage on said tract, and the first lien thereon.

It follows that the court erred in its first and third conclusions of law in stating that appellee bank was entitled to have its mortgage reformed so as to include Judy's interest in said forty-acre tract, and that the

same, when reformed, was a first lien thereon. This error was carried into the final decree.

For the reasons given the cause must be reversed. On account of the discrepancies between the descriptions of the, real estate in the cross-complaint and special finding and the final decree, we think' justice will best be done by ordering a new trial of said cause.

The judgment is therefore reversed, with instructions to grant a new trial of said cause as to all the parties except Elizabeth Judy, and the judgment in her favor is affirmed.

McCABE, J., took no part in the decision of this cause.