## SMELSER *v.* PUGH.

[No. 4,073.   Filed October 16, 1902.]

REFORMATION OF INSTRUMENTS.—*Complaint.*—In an action to reform a written instrument, it is necessary to set forth the terms of the original agreement, and also the agreement as reduced to writing, and point out with clearness wherein the mistake was made. *p. 618.*

PLEADING.—*Blank Dates.*—Leaving dates blank in a pleading can not be reached by demurrer, but by motion to make more specific. *p.*618.*

REFORMATION OF INSTRUMENTS. — *Pleading.*—An allegation in a pleading to reform a written instrument, "that by mutual mistake and inadvertence of the parties, * * * and by the mistake of the scrivener who wrote the same" the contract was so written, is sufficient to show that the mistake was mutual. *pp. 618, 619.*

PLEADING.—*Conclusion.*—The word "mistake," as used in a pleading to reform a written instrument on the ground that the contract was so written by mutual mistake of the parties, is the statement of a fact, and not a mere conclusion. *p. 619.*

REFORMATION OF INSTRUMENTS.—*Failure of Plaintiff to Read Contract.*— The fact that plaintiff failed to read a contract as written will not defeat his action to reform it on the ground of mutual mistake. *p. 619.*

SAME.—*Complaint.*—A complaint to reform a written contract which shows what the contract actually was by specifically stating all the facts, and what was mutually agreed upon between the

parties, and that by mutual mistake of the parties and the scrivener the contract sought to be reformed was written, is sufficient. *pp. 620, 621.*

From Marion Superior Court; *J. M. Leathers*, Judge.

Action by George M. Smelser against Edgar Pugh on a contract of settlement. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*E. P. Ferris* and *W. W. Spencer*, for appellant.

*J. W. Kealing*, for appellee.

Wiley, C. J.—Appellant and appellee were partners engaged in selling groceries at retail. Prior to the commencement of this action that partnership was dissolved by mutual consent, and the supposed terms of dissolution were reduced to writing, and are as follows: "Indianapolis, Ind., Sept. 22, 1899. This is to certify that George Smelser and Edgar Pugh have to-day dissolved partnership, George Smelser having sold to Edgar Pugh his interest in stock of groceries, fixtures, horses, and wagons, etc., located at and known as 435 & 437 N. Noble street, Indianapolis, for the sum of $552.18, for value received, said Edgar Pugh agreeing to pay all known indebtedness of said firm." (Signed by the parties.) Appellant sued appellee upon that contract of settlement. Issues were joined on the complaint by answer and reply. Appellee also filed a cross-complaint asking that the contract of settlement be reformed. A demurrer to the cross-complaint was overruled, and such ruling is the only error assigned. The cause proceeded to judgment against appellant.

In the cross-complaint it is averred: That appellant and appellee had been partners, and, by the terms of the partnership, were to share equally in the profits and losses; that, for some time prior to the dissolution, the business had been conducted at a loss; that the firm had become deeply involved in debt, was practically insolvent, and that, by reason of continued losses and impaired credit, the business of the partnership could no longer be carried on at a profit;

that on the — day of September, 1899, to the end that said business be closed out, they entered into negotiations and mutually agreed that said partnership should be dissolved; that an appraisement and inventory of all partnership property should be made; that appellee should purchase the appellant's interest; and that, in consideration and payment therefor, appellee would assume and agree to pay off appellant's share of the indebtedness, which was one-half, —an amount equal to one-half of the appraised value of the firm's assets; that, by the terms of settlement, appellee was also to pay one-half of the known indebtedness, and any amount remaining in excess of said total indebtedness, as then known, should be equally divided and paid between them; that such appraisement and inventory were made, and amounted to $1,104.35, making the interest of each of said parties $552.18; that the total indebtedness then known, and as shown by the inventory, aggregated $1,133.77, exceeding the appraisement of the stock $29.42; that upon the completion of said appraisement and inventory it was mutually agreed that said partnership should be dissolved by appellee purchasing appellant's interest in the business, in consideration of appellee agreeing not only to pay his share of said indebtedness, but also agreeing to pay appellant's share thereof in an amount equal to one-half of the appraised value of the partnership property, to wit, the sum of $552.18; that at that time it was further mutually agreed that the excess of the known liabilities over the appraised value, as well as any indebtedness not then known, should be paid out of the proceeds collected from accounts due the firm, and that any excess thus collected should be divided equally between them; that by the terms of the said settlement and dissolution, appellee was to become the sole owner of all the firm's property and business, and no money was to be paid directly to appellant for his interest in the firm's property, but that the sole consideration for the transfer by appellant to appellee was the agreement by ap-

pellee to assume and pay the indebtedness of appellant in said business, in the sum of $552.18, and the said appellee to pay his share of the indebtedness as above stated. That it was then agreed between them that a receipt or memorandum in writing, containing the terms of said agreement, should be entered into and signed by them, and pursuant thereto a memorandum of sale or receipt was reduced to writing and signed. (This memorandum is filed as an exhibit to the cross-complaint, and is set out in full above.) That by mutual mistake and inadvertence of the parties, and wholly without negligence upon their part, and by mistake and inadvertence of the scrivener who wrote the same, the said memorandum of sale or receipt was so written to read that appellee was to pay to appellant for his interest in said partnership business the sum of $552.18, and in addition thereto assume all known indebtedness of the firm, when in truth, and as matter of fact, it was mutually agreed and understood and intended by the parties so to frame and write said agreement that the only consideration to be given by appellee to appellant for his interest in the partnership property was the agreement of appellee to pay appellant's share of the firm's indebtedness to the amount of $552.18, equaling the share of appellant's interest in the partnership business and property, as shown by said inventory and appraisement, and the further agreement of appellee to pay his share of the partnership liability, and that said agreement was so mutually agreed upon and understood by the parties at the time; that, pursuant to said agreement as actually understood and in good faith accepted and subsequently construed by them, said partnership property was delivered to appellee, who entered into the performance of said agreement and is ready, anxious, and willing to comply with the terms thereof; that, prior to filing the cross-complaint, appellee demanded of appellant that he correct said instrument of writing so as to comply with and express the true intention of the parties, which he

wholly failed and refused to do. Prayer for reformation, etc.

The facts stated in the cross-complaint, the truth of which is admitted by the demurrer, make a strong case for reformation, and it only remains to determine if such facts are well pleaded. We shall consider the objections to the cross-complaint urged by appellant. Counsel for appellant argue that the cross-complaint does not set out by copy the written contract upon which appellee's cause of action is based. It is sufficient answer to this to say that the cross-complaint does not purport to rest upon a written contract, but it does set out specifically what the contract between the parties was, and avers that the written contract which is the basis of appellant's action was the result of mutual mistake. That contract is made an exhibit to the cross-complaint, and becomes a part of it. In an action to reform a written instrument, it is necessary to set forth the terms of the original agreement, and also the agreement as reduced to writing, and point out with clearness wherein there was a mistake. *Citizens Nat. Bank* v. *Judy,* 146 Ind. 322, and authorities there cited. These requirements are complied with in the cross-complaint.

It is next suggested that the cross-complaint is bad because two dates are left blank. There is no merit in this contention, for such omission can not be reached by a demurrer but by motion to make more specific.

Appellant also contends that the facts pleaded do not show that the mistake was mutual. The established rule is that equity will reform a written contract between the contracting parties, whenever, through mutual mistake or mistake of one of the parties accompanied by fraud of the other, it does not, as reduced to writing, correctly express the agreement of the parties. *Citizens Nat. Bank* v. *Judy, supra,* and authorities there cited. There is no charge of fraud in this case, and to uphold the cross-complaint it must affirmatively state facts showing that the contract re-

lied upon by appellant, and which appellee seeks to reform, was the result of mutual mistake and inadvertence. We do not see how it could be more clearly expressed than it is in the cross-complaint, for it is stated "that by mutual mistake and inadvertence of the parties * * * and by the mistake and inadvertence of the scrivener who wrote the same," the memorandum of sale or receipt was so written.

We have before us in the cross-complaint a clear and succinct statement of the contract as actually made, understood, and intended by the parties to be reduced to writing, and the agreement actually reduced to writing and signed by them. The material differences between the contract as actually made and agreed upon, and the one signed by the parties, are clearly distinguished, and as the demurrer admits these facts the conclusion necessarily follows that the mistake was mutual. See *Keister* v. *Myers,* 115 Ind. 312; *Roszelle* v. *Roszelle,* 109 Ind. 354, 356; *Baker* v. *Pyatt,* 108 Ind. 61, 65.

It is further contended that the word "mistake," as used by the pleader, is the mere statement of a conclusion and not the statement of a fact. This contention is not well grounded and finds no support in the authorities. The next objection urged is that there are contradictory statements in the cross-complaint. We are unable to find any such statements that could be reached by demurrer.

Appellant next insists that appellee is not entitled to be relieved from the contract signed by him, on account of his own negligence in failing to read it before signing it. We can not believe that any question of negligence is presented by the facts pleaded. It is said in Pomeroy's Eq. Jurisp., §1376: "Equity has jurisdiction to reform written instruments in but two well-defined cases: (1) When there is a mutual mistake,—that is, where there has been a meeting of minds,—an agreement actually entered into, but the contract, deed, settlement, or other instrument, in its written form, does not express what was really intended by the

parties thereto; and (2) where there has been a mistake of one party accompanied by fraud or other inequitable conduct of the remaining parties. In such cases the instrument may be made to conform to the agreement or transaction entered into according to the intentions of the parties." The Supreme Court, in the case of *Citizens Nat. Bank* v. *Judy,* 146 Ind. 322, quoted approvingly the above. To the same effect, see Tiedeman on Eq. Jurisp., §507; *Earl* v. *VanNatta, ante, 532.*

In the case of *Walden* v. *Skinner,* 101 U. S. 577, 25 L. Ed. 963, it was said: "That where an instrument is drawn and executed, that professes or is intended to carry into execution an agreement, which is in writing or by parol, previously made between the parties, but which by mistake of the draughtsman, either as to fact or law, does not fulfil, or which violates the manifest intention of the parties to the agreement, equity will correct the mistake so as to produce a conformity of the instrument to the agreement, the reason of the rule being that the execution of agreements fairly and legally made is one of the peculiar branches of equity jurisdiction, and if the instrument intended to execute the agreement be from any cause insufficient for that purpose, the agreement remains as much unexecuted as if the party had refused altogether to comply with his engagement, and a court of equity will, in the exercise of its acknowledged jurisdiction, afford relief in the one case as well as in the other, by compelling the delinquent party to perform his undertaking according to the terms of it and the manifest intention of the parties." The case made by appellee in his cross-complaint comes squarely within the rule declared by the Supreme Court of the United States, in the case from which we have quoted.

Counsel for appellant next urge that the cross-complaint is defective because it does not show how the mistake occurred. A careful reading of the cross-complaint dissipates this objection. As to what the contract actually was, is set

Hogue v. State, ex rel.

out by specifically stating all the facts and what was mutually agreed between the parties. It is there stated that, by the mutual mistake and inadvertence of the parties and the scrivener, the contract sued upon by appellant was executed. This is sufficient.

The mistake charged in the cross-complaint was not one of law, as next contended by the appellant, but one of fact. The contract relied upon by appellee is consistent with the situation and surroundings of the parties, while the contract relied upon by appellant, in the light of the facts pleaded, is both unconscionable and unreasonable. Judgment affirmed.