RENIHAN *v.* PIOWATY.

[No. 14,214. Filed February 3, 1932. Rehearing denied May 9, 1932. Transfer denied June 29, 1932.]

*Renihan & Lilly, Thad M. Talcott, Jr.,* and *Walter R. Arnold,* for appellant.

*Dudley M. Shively,* for appellee.

KIME, J.—M. Piowaty and Sons was a corporation organized in 1912, and doing business at Grand Rapids, Michigan. The corporation had, on various occasions, borrowed money from George E. Ellis, a private banker, who died in February, 1921. At the time of the latter's death, the corporation was indebted to the banker on two promissory notes, one for $4,000, and the other

for $8,500. The first became due October 4, 1921, and the latter on December 1, 1921.

After the death of the banker the appellant herein, as administrator of Ellis' estate, continued to conduct the business of the bank for the purpose of winding up the estate. David R. Eason, the cashier, carried on the actual banking business for the administrator. After the death of Mr. Ellis, and about the middle of September, 1921, Fred Piowaty, who was in active management of the corporation, was stricken ill and was unable to attend the business. Ernest Piowaty, his brother and appellee herein, who was a resident of South Bend, Indiana, and conducted a similar business there, but who was not in any way connected with the corporation or a stockholder in same, went to Grand Rapids for the purpose of substituting for Fred Piowaty in the conduct of the business during the latter's illness. During the period that he conducted the business from September, 1921, until the spring of 1922, he acted in the capacity of manager or assistant to Fred, whose official position was that of secretary-treasurer and executive officer of the corporation. During this period the notes above referred to became due. When the $4,000 note came due a renewal note for the same amount was prepared on October 4, 1921, by Mr. Eason, who prepared it in the usual way and on the usual form and delivered same to Ralph O. Tucker, who at that time was general sales manager and general assistant to the executive officer of the corporation. Tucker took the note to appellee, who signed it "M. Piowaty & Sons, Ernest Piowaty"; Tucker took it back to Mr. Eason at the bank. It appears from the evidence that Ernest Piowaty had no conversation with Mr. Eason regarding the note whatsoever, and that the only conversation regarding same was between Tucker and Eason. Eason asked Tucker who Earnest Piowaty was, and wanted to know whether

Ernest Piowaty was authorized to sign notes and other papers for the corporation, to which Tucker replied that Fred Piowaty was sick, unable to be at the business, and that Ernest had come up from South Bend to assist him until he was better. The renewal note was thereupon accepted, and the renewal note for $8,500 was executed under the same circumstances except that Eason, at the time of renewal wanted to know if it were not possible for the corporation to make a reduction in its indebtedness and was told that the corporation did not deem it advisable at that time. Both the renewal notes were made payable in 90 days from date. When they became due the corporation was in financial straits, and shortly after the appellee left Grand Rapids the corporation went into the hands of a receiver and was wound up as insolvent. On September 8, 1926, about five years later, appellant as administrator of the estate of George Ellis, deceased, commenced this action against appellee on the notes.

Appellee answered appellant's complaint with a general denial and an affirmative paragraph of answer. Appellant addressed a demurrer to this answer, which was sustained. Appellee filed an additional pleading which he denominates a third paragraph of answer by way of cross-complaint setting forth that at the time and immediately before the delivery of the notes it was agreed upon between the appellee and appellant that said notes should be the notes of the corporation in renewal of previous notes, and that there would be no liability of the appellee, and that the appellee was merely acting as authenticating agent and not otherwise, and that through inadvertence and mistake the appellee had omitted to precede his signature under the name of said "M. Piowaty & Son," by the words "by" and after his said name the words "acting manager," and that appellant knew of said omission and took said notes with the

understanding that appellee was in no manner liable thereon.

Appellant demurred to the third paragraph of answer, claiming that it sought thereby to alter the liability of the maker by reason of a principle of law applicable to his act and deed, and sought, not to supply an omission in the instrument, but to remove a legal liability apparent on the face of it. This demurrer was overruled. The issues were closed by a reply in denial. The court found on the third paragraph of answer by way of cross-complaint for the cross-complainant (the appellee) that the allegations therein were true and decreed the reformation and correction of said notes by the insertion of the word "by" immediately preceding the signature of the appellee, and by the insertion of the words "acting manager," immediately succeeding the appellee's signature on said instruments; and the court found for the appellee that appellant take nothing by his said complaint, and that appellee recover of appellant his costs.

Appellant filed a motion for a new trial, claiming that the decision of the court was not sustained by sufficient evidence and that it was contrary to law. The motion was overruled and hence this appeal. Error assigned here is the overruling of the motion for a new trial and the overruling of appellant's demurrer to the third paragraph of answer.

Regarding the overruling of the demurrer to appellee's third paragraph of answer, appellant contends that this paragraph contains no *specific* averment of a mutual understanding that appellee's signature should be preceded and succeeded by words indicating appellee's alleged representative capacity, and that therefore the court erred in overruling said demurrer. We do not agree with this contention. It is our opinion that the paragraph in question, taken as a

whole, contains sufficient allegation that the mistake was mutual, in addition to other matters that tended to impute the same meaning. Our Supreme Court has held that a demurrer will lie only where the pleading is so indefinite and uncertain as entirely to fail to state a cause of action. *Williams* v. *Board, etc.* (1889), 121 Ind. 239, 23 N. E. 76.

This brings us to the question as to whether or not there was any evidence to support the action of the trial court in ordering the correction and reformation of the notes upon which this suit is predicated, and rendering judgment in favor of appellee. Appellant strongly urges that there is no evidence to support certain material averments made by appellee, and further contends that the legal import of a document cannot be altered by reformation.

It appears from the evidence that Ernest Piowaty's sole and only connection with the notes sued upon was as a temporary substitute for and on behalf of his sick brother, Fred S. Piowaty. It was shown that prior to the time of acceptance of the renewal notes the bank had been advised of the exact capacity in which appellee was acting. Eason specially inquired of Mr. Tucker as to whether Ernest (appellee) had power or authority to sign notes and other papers *for the corporation,* and, upon being assured that he had such authority, accepted the notes. The evidence also showed that, in September, 1922, Carl Piowaty, vice-president of the defunct corporation, had a conversation with the appellant herein who declared that "they knew they were 'stuck' on the notes because they had 'no collateral or security,' " thus showing the attitude that was being taken toward the notes at that time. As to the question of mutuality of mistake, we have but to say that from the evidence adduced it appears that all parties involved intended that the corporation only

was to be bound. We believe it is clear that Eason and Ernest Piowaty intended the same thing and contemplated the same legal liability at the same time. We believe the intent was mutual and was defeated only by the inadvertant form of appellee's signature, thereby creating a mutual mistake and a mutual oversight. The evidence further shows that the original loans were made solely on the credit of the corporation, and that at the time or prior to the execution of the renewal notes appellant requested that a reduction be made in the indebtedness and was advised that it was not possible to do so at that time, but we fail to find a single scintilla of evidence wherein appellant requested security or additional signatures on the notes.

Here we are confronted with a situation wherein appellee asked for and received equitable relief, and the important question before us is whether or not such relief should have been granted. This court is in harmony with the rule that a mistake, to be ground for reformation, must be mutual. Appellant insists that the mistake, if there was such, was unilateral on the part of appellee. With this we do not agree. The evidence on this point may not have been overly weighty, but there was some evidence to support the finding of the trial court, and this court has consistently held that, where there is some evidence to support the finding of the court below, the judgment will not be reversed.

The established rule is that equity will reform a written contract whenever, through mutual mistake, or the mistake of one of the parties accompanied by fraud of the other (no fraud being alleged in the case at bar), it does not, as reduced to writing, correctly express the agreement of the parties. *Webb* v. *Hammond* (1903), 31 Ind. App. 613, 68 N. E.

916; *Smelser* v. *Pugh* (1902), 29 Ind. App. 614, 64 N. E. 943; *Citizens Nat. Bank* v. *Judy* (1896), 146 Ind. 322, 43 N. E. 259.

We quote with approval the language of the court in *Lee* v. *Percival* (1892), 85 Iowa 639, 52 N. W. 543, in which case the facts were very similar in many respects to the case at bar: "It is clearly shown that the note was given for the exclusive benefit of the company; that nothing was said before it was made that it should be signed by anyone but the company; and that in signing it the defendants intended to bind the company only, and not themselves. The evidence satisfies us also that plaintiffs had no reason to believe that the defendants would sign the note, excepting as officers of the company, and did not expect them to do so. When the plaintiffs desired the note they wrote to 'Alex. Hastie, secretary Herndon Natural Gas & Land Co., at Des Moines, inclosing the note in blank, and saying: 'Please have properly signed and return to us.' It cannot be said that they were indifferent as to who signed it. Their dealings had been with the company. They had no ground for believing that any one but the company would pay its debts, and their request as to the manner of signing was no doubt designed to cause the note to be so signed as to bind the company. . . . When time was given, the note of the company only was required. When the note was made, the defendants affixed the signatures in question because they supposed that to be the proper way to make the note of the company. Plaintiffs must have known the intent with which the note was signed, and must also have believed that it was the note of the company only, or else they received it fraudulently, knowing of the mistake of the defendants, and intending to profit by it. We will presume that they were mistaken, rather than that they were dishonest." The above language expresses the attitude

of this court regarding the instant case, and a careful study of all the evidence herein leads us to but one conclusion, i. e., that it was the intention of appellee to bind only the corporation, and that this intention was known and acquiesced in by appellant. Every reasonable inference that can be drawn from the evidence also indicates such an intention on the part of all those concerned.

Finding no reversible error, the judgment of the St. Joseph Superior Court is in all things affirmed, and it is so ordered.