BELLE HERSMAN and KITTIE M. EDWARDS v.
STRAUTHER G. HERSMAN, Appellant.

**Division One, December 6, 1913.**

1. **SPECIFIC PERFORMANCE: Contract to Convey: Requisites.** In order that there may be a decree of specific performance of a contract to convey lands the contract pleaded must be the contract proved; that contract must be clear and certain in its terms and must be one for the *conveyance* of the property; the evidence of the making of the contract must be so clear, cogent and convincing as to leave no reasonable doubt on that head; the consideration must be fair, and the acts done in alleged performance of the contract by the plaintiff must be referable solely to the contract and explicable on no other reasonable theory.

2. **WEIGHING EVIDENCE: Deference to Chancellor.** Where the trial judge did not have the witnesses before him, but decided upon a transcript of the evidence taken before another judge and upon depositions, and where the witnesses were not residents either of the county in which the case was decided or of the circuit over which the trial judge presided, he cannot be presumed to have been in a more advantageous position to weigh the evidence than is the Supreme Court upon appeal.

Appeal from Macon Circuit Court.—*Hon Nat. M. Shelton*, Judge.

REVERSED.

*R. W. Beeson* and *Guthrie & Franklin* for appellant.

*A. W. Mullins* and *F. E. Lindquist* for respondents.

Plaintiff was entitled to a decree for the property as against the defendant without regard as to how he held the title thereto, or how he acquired it. Clark v. Cordry, 69 Mo. App. 6; Koch v. Hebel, 32 Mo. App. 103; Wright v. Tinsley, 30 Mo. 389; Gupton v. Gupton,

47 Mo. 37; Sutton v. Hayden, 62 Mo. 101; Sharkey v. McDermott, 91 Mo. 647; Alexander v. Alexander, 150 Mo. 579; McQuitty v. Wilhite, 247 Mo. 163.

BLAIR, C.—Defendant is a brother of the plaintiffs and appeals from a judgment of the circuit court of Macon county devesting him of the title to a certain house and lot in Brookfield, Missouri, and vesting it in plaintiff, Belle Hersman. The original petition was filed August 15, 1907, in the circuit court of Linn county, whence the cause was taken to Macon county by change of venue, where it was heard in 1908 by a special judge. The cause was taken under advisement and at the September term, 1908, the objection being made that the special judge's power ended with the term at which he heard the case, it was resubmitted by agreement to the regular judge of the circuit, Hon. NAT M. SHELTON, on the transcript of the evidence previously taken and some additional depositions and the oral testimony of one additional witness.

The amended petition on which the case was finally submitted was filed by leave and to conform to the proof after the evidence had been heard by the special judge and before the case was finally submitted to the regular judge.

Plaintiffs' amended petition, in substance, alleged that on the 18th day of August, 1898, plaintiffs were the owners in fee of a certain lot of ground in the city of Brookfield, Linn county, Missouri; that while the title to said real estate was taken in the names of plaintiffs, one thousand dollars of the purchase price thereof, which was $1600, was contributed by their mother, Mrs. Mary Hersman, and the remainder, $600, by the plaintiffs, each paying $300, and that in fact plaintiffs held said property in trust for the use and benefit of their mother. That on the 29th day of May, 1899, plaintiff Belle Hersman conveyed by warranty deed her interest in said real estate to her sister and coplaintiff, Mrs.

Kittie M. Edwards, and that while said deed recites a consideration of $2000, in truth and in fact the only consideration therefor was an agreement between them that Mrs. Edwards should take care of their father and mother, Michael M. and Mrs. Mary Hersman, and said Belle Hersman, during the remainder of their respective lives, all of which facts the defendant well knew.   That on the 9th day of May, 1901, said Kittie M. Edwards and her husband, J. B. Edwards, by warranty deed, conveyed said real estate to the defendant, and that while the deed recites a consideration of $2000, "the only cash consideration therefor was the sum of $500, about $400 of which had theretofore been paid out by said Kittie M. Edwards for repairs on the buildings and improvements situated on said premises, and the further stipulation and agreement that said defendant would well and truly care for said Michael M. Hersman and Mrs. Mary Hersman and the plaintiff, Belle Hersman, support them, and let them occupy said property, as long as they should live, and that in consideration of the services to be rendered by said Belle Hersman, as hereinafter stated, said defendant would convey to or cause to be vested in said plaintiff, Belle Hersman, the title to said real estate and premises at the death of said Michael M. Hersman and Mary Hersman, and plaintiffs aver that the defendant acquired said property as aforesaid in trust for the use and benefit of said Michael M. Hersman and Mary Hersman and the plaintiff, Belle Hersman, and to furnish support for them during their natural lives." That said Michael M. Hersman, on the .—— day of February, 1903, departed this life at the city of Brookfield.   That at the time of the making and delivery of said deed to the defendant, said Mary Hersman, mother of plaintiffs and defendant, was suffering with nervous prostration, stomach trouble and other ailments, and remained sick and under the care of physi-

cians from said time up to the time of her death, on the 10th day of June, 1907. That from the 29th day of May, 1901, up to the 10th day of June, 1907, defendant contributed about twenty-five dollars a month towards the support of said Mary Hersman and Belle Hersman, and permitted them to use and occupy said premises, and that at the time of the aforesaid conveyance of the property to defendant by plaintiff Kittie M. Edwards and her husband, it was agreed by and between plaintiff Belle Hersman and the defendant that she, the said Belle, "would nurse, care for and wait upon said Michael M. Hersman and Mary Hersman while they lived, the defendant providing the maintenance for them, and for which defendant would make no charge, and at the death of said Michael M. Hersman and Mary Hersman said property should belong to and be vested in said plaintiff, Belle Hersman; and that said plaintiff faithfully fulfilled her said agreement, and in all respects discharged her said undertaking and the duties she assumed." That the defendant, wholly disregarding his undertaking in the premises, subsequent to the death of said Michael M. Hersman and Mary Hersman, and on the 5th day of October, 1907, made a voluntary conveyance of said real estate to his son-in-law, J. L. Miller, for the purpose of defrauding the said Belle and depriving her of any redress in the premises, and has refused and still refuses to make her any compensation whatsoever. That defendant did not care for said Mary Hersman nor provide for her any nursing, except by said Belle Hersman, by reason whereof the said Belle was compelled to, and did, watch over, care for and nurse the said Mary Hersman, day and night, during all of said time and up to the time of her death. That since the death of said Mary Hersman said defendant has wholly failed and refused to in any way provide for said Belle Hersman, except permitting her to reside in and occupy the said premises. That the reasonable value of the services so rendered

by said Belle Hersman from said 29th day of May, 1901, up to the time of the death of said Mary Hersman, June 10, 1907, a period of 2201 days, is $2201, and that defendant is indebted to the said Belle for said sum. That plaintiff Kittie M. Edwards says she claims no interest in the amount so claimed, but joins in the petition in order that right, equity and justice may be done between said Belle Hersman and the defendant. That in equity and justice, said sum of $2201, or such part thereof as does not exceed the value of said property, should be adjudged and decreed to be a lien on the aforesaid real estate for the amount so due, and said property sold to satisfy said lien.

The prayer of the petition is, "that said Belle Hersman have and recover of and from the defendant the said sum of $2201; that said amount be adjudged and decreed by order of this court to be a lien upon said above described real estate; that said real estate be sold to satisfy said lien, and that the court may make such other and further orders, judgments and decrees in the premises as may seem just."

Defendant's answer to the amended petition was a general denial.

In addition to vesting the title in plaintiff, Belle Hersman, the court found against her demand for a money judgment, and found that plaintiff Kittie M. Edwards had no interest in the matter.

Michael M. and Mary Hersman, the parents of the parties hereto and six other living children, formerly lived in Illinois, where Mrs. Hersman owned a cottage which she sold in 1898, and $1000 of the proceeds, together with $600, furnished in equal parts by plaintiffs, was invested in the property in suit, plaintiffs taking the title in their names with the understanding that they were to care for their aged parents while they lived. In October, 1898, plaintiffs and their parents and the husband of plaintiff Kittie M. Edwards moved to the premises now involved and lived there together,

the support of this family devolving largely upon Mr. and Mrs. Edwards. On May 29, 1899, Belle Hersman, by general warranty deed, conveyed her interest in the property to her coplaintiff, Mrs. Edwards, the real consideration for the conveyance being, according to plaintiffs, the promise of Mrs. Edwards that she would thereafter provide for and support the parents and Belle during their lifetime. The deed recited a consideration of $360, but the testimony of plaintiffs is that no money passed. Plaintiffs' mother was present at the time the two sisters entered into the agreement, pursuant to which Belle Hersman conveyed to Mrs. Edwards, and assented thereto. About a year after this transaction the parents became dissatisfied with the manner in which the title to the property was held, and Mrs. Hersman expressed a desire to have the property conveyed to her. The evidence indicates this dissatisfaction was largely the result of interference on the part of other members of the Hersman family who made occasional visits to the old people. There was correspondence between various members of the family, and complaints were made that the parents were being mistreated. There is no evidence that such was the fact. A letter written by defendant to Belle Hersman, after the dissatisfaction arose, contained the following:

"I received your letter a few days ago; glad to hear from you and to hear that everything is going to be fixed up so that it will be satisfactory to all concerned, as I know everything in the end will be for you and Kate. I was sorry that Kate felt as she did over it, as there was no one that wanted to take anything, away from her. . . . .

"Now, Belle, if Kate will deed the place to me, and you folks want to stay there, it will be perfectly satisfactory to us boys; the only thing we want is for pa and ma to live the rest of their days in peace and quiet, and to have what they need."

Hersman v. Hersman.

By reason of the dissatisfaction alluded to, Mrs. Edwards with her husband had a deed prepared in May, 1901, for the purpose of conveying the property to the mother, Mrs. Hersman, but before it was executed, defendant, by letter mailed to another sister, Mrs. E. Young, offered to pay Mrs. Edwards $500 for the property, or for Mrs. Edwards' interest therein, the letter containing defendant's check for said sum. Defendant and his letter arrived in Brookfield simultaneously, and the same day, May 29, 1901, Kittie M. Edwards and her husband, J. B. Edwards, executed a deed conveying the property to defendant, and the latter delivered his check for $500 to Mrs. Edwards. Mrs. Edwards testified that prior to this transaction she had paid out about $400 for improvements and repairs on the property.

With respect to what defendant said in conversations concerning the conveyance by Kittie M. Edwards to him, plaintiff Belle Hersman testified that previously a deed from Mrs. Edwards and husband to Mrs. Mary M. Hersman, the mother, had been prepared but it was not executed; that "brother Strauther said he would not take it that way; that he did not want to, and if we would make it in his name he would provide for them (the parents) as long as they lived and at their death when they were through with it it should be mine," i. e.; Belle Hersman's. The witness continued: "After that talk the deed was made and signed over to brother Strauther. I don't think I know who wrote the deed; no, I cannot say. Brother Strauther told me that he would see that I was provided for. I should have provisions. I had nothing to live on. I had nothing to buy anything for my father and mother, nothing." On cross-examination she testified that after defendant came to Brookfield he secured the $500 he had previously sent "and the deed was made and settled and my brother (defendant) came to the room where mother and my sister, Mrs.

Edwards and Mrs. Durham and I (were) and he said, 'Now, Ma, it is all fixed just as long as you live. I take it in my name to save it for Belle there, none of the rest will get any.' That is just the conversation and I think we can prove that.''

Regarding the same conversation Mrs. Kittie M. Edwards testified that after defendant reached Brookfield, May 29, 1901, and secured the check previously alluded to, he had the deed prepared to himself as grantee and ''he had the justice of the peace bring it to the house and he gave us the money and we signed the deed. My brother, the defendant, gave us the $500. Yes, he turned to mother and says: 'I am going to put this property in my name so when you and pa die we can save it for Belle. What I do for you I want nothing in return for—what I do for my parents;' and then mother says, 'Who will take care of us,' and he says, 'I expect Belle to do so.' Sister Belle was with us at the time.'' This conversation was on the 29th day of May, 1901, the day the deed was executed. The deed had been made then and there. She further testified defendant told her ''he would not put up any money on the property unless it was in his name so he could save the property for Belle.''

Mr. J. B. Edwards, husband of plaintiff Kittie M. Edwards, testified that after the deed was made and, he thought, on the same day, either he or his wife asked who ''was going to look after the folks,'' and defendant said ''Belle will do that.''

Mrs. Rutliff testified that some time in the spring of 1903 she heard Mrs. Mary Hersman say to defendant that ''she felt sorry for Belle and she was sorry she was causing her so much trouble;'' that defendant told her ''not to let that worry her, he would see that Miss Belle was cared for.'' This, the witness said, was a fragment of a conversation, the remainder of which she did not hear.

Mrs. Durham, a grandniece of the parties hereto, testified that on the day the deed was made she heard defendant say to his mother, "The reason I want the deed to be made in my name was so none of the rest of the children would come in for anything at yours and father's death . . . at yours and father's death the home shall go to Belle .    . I don't want anything for what I do for you." Witness said plaintiffs were present at the time this was said.

It is clear that defendant agreed to furnish twenty-five dollars per month toward the support of his parents and sister Belle, and the evidence shows he furnished this much or more each month after the deed was delivered to him and, in addition, occasionally paid bills for fuel, medical attention, etc., amounting to a considerable sum, and also paid the taxes and his father's funeral expenses. Plaintiff Belle Hersman lived with the father and mother until their deaths in 1903 and 1907, respectively, and took constant care of them. They were quite old and required much attention. The only means she and they had during the six years from May 29, 1901, to June 10, 1907, when the mother died, was the money defendant furnished. The total amount defendant furnished was about twenty-five or twenty-six hundred dollars.

It conclusively appears that on the day the deed to defendant was executed the Hersmans and Edwardses moved out of the property in suit, going to a house occupied by a sister of the parties hereto, Mrs. Young. Plaintiffs say the purpose of the removal was that Mrs. Young might aid in caring for the parents until plaintiff Belle, who was in poor physical condition, might recover her strength.

The father, Michael Hersman, was dissatisfied at Mrs. Young's, and defendant was notified and consented to the return of his parents and sister Belle to the property in suit. Thereafter they occupied it until the mother, the surviving parent, died in June, 1907.

Belle Hersman testified that on the day of the mother's funeral she said to defendant, "Now, what are you going to do. I am left here all alone and nothing to do on," and that defendant replied, "I will tell you, Belle, I am going to sell this home," at which witness says she fainted.

Plaintiffs instituted this suit August 15, 1907.

Defendant testified he understood his mother had an interest in the property, having invested $1000 in it, and that the reason the deed was made to him was that there was a judgment against his father and mother and sister Belle; that the understanding was he was to sell the property and use the proceeds for the support of his parents and that this was the reason they removed to Mrs. Young's home when the deed was executed to him. That he sent twenty-five dollars per month to them after the deed was made, and after his father's funeral his mother asked him if he would continue these remittances. He says he told her he would, and she then said that if he did so any interest she had in the property should be his at her death, and Belle Hersman then said, "Strauther, if you will do that I will stay here and take care of mother," and the mother then told Belle she, in that case, should have the personal property.

The plaintiffs' evidence shows Belle Hersman has the personalty.

Defendant says his sister Belle never made any claim for services during the years after 1901 though he saw her a number of times and the first he heard of such a claim was when he received a copy of the notice by publication in this suit. Defendant denied the conversation attributed to him and testified that the only agreement he made was the one made at the time of his father's death.

With respect to material parts of the conversation with the mother and Belle, which defendant detailed, he is corroborated by a brother, John Hersman, and is

fully corroborated by another brother, Joseph Hersman.

Laura Seibert, another sister, corroborates defendant as to the same conversation, and further testifies she heard her mother say in 1907 she would "die easier if Strauth would promise to take care of Belle," but, she added, defendant "never promised." She says the understanding was that Belle Hersman should, after the mother's death, live with Mrs. Edwards.

After this suit was instituted and *lis pendens* filed defendant executed a deed to his son-in-law in consideration of a cash payment of $500 and notes for a balance of $2000.

There is no direct evidence defendant knew of any agreement between plaintiffs and their mother made in consideration of the transfer by Belle Hersman to Kittie M. Edwards and no evidence he knew plaintiffs had contributed anything to the purchase of the property. He denies any knowledge of either matter. He knew, however, that his mother had paid $1000 of the purchase price. He says he did not convey to his son-in-law in order to put the property beyond the reach of Belle Hersman but did so as a part of his plan, then being worked out, to get his affairs in shape for easy settlement in case of his death, his health being poor.

I. Counsel for defendant contend the decree is not warranted by the evidence.

So far as the principal issue presented is concerned it is unnecessary to follow counsel through the controversy concerning the question whether the property was impressed with a trust. This is true because the decree vests the entire title in Belle Hersman; and whether defendant took title under the Edwards deed in his own right or as trustee, there being no pretense of any conveyance or devise to Belle, the only thing suggested by either pleadings or evidence which it could be contended justifies the decree is the agreement

the petition alleges was made whereby Belle Hersman was to care for her father and mother during their lives in consideration of the conveyance of the property to her after they died.

In view of the fact that the agreement is alleged to have been made between Belle Hersman and defendant and the fact that it is not alleged Mary Hersman, the mother, was a party thereto, it well might be said that the question as to defendant's trusteeship for his mother is eliminated by the petition itself in so far as it could affect the question as to the sufficiency of the evidence to support the decree rendered.

The character of the evidence is such, however, that this phase of the matter need not be further discussed in connection with the particular question now under consideration.

The decree is one for the specific performance of an alleged oral agreement, and the evidence must be examined in the light of the principles applicable in such circumstances. These principles frequently have been formulated by this court (Collins v. Harrell, 219 Mo. 301 et seq.; Forrister v. Sullivan, 231 Mo. l. c. 373 et seq.; Walker v. Bohannan, 243 Mo. l. c. 135 et seq.; Oliver v. Johnson, 238 Mo. l. c. 373), and it is unnecessary to indulge in a recapitulation of them. The particular rules to be kept in mind in examining the evidence are that the contract pleaded is the one which must be proved; that the contract pleaded and proved must be clear and certain in its terms and must (in this case) be one for the *conveyance* of the property involved; that the evidence of the making of the contract contended for must be so clear, cogent and convincing as to leave no reasonable doubt on that head; and that the consideration must be fair, and the acts done in alleged performance of the contract by the plaintiff must be referable solely to the contract and explicable on no other reasonable theory.

**Specific Performance: Contract to Convey Lands.**

These principles have been approved so frequently and recently and the danger of rules less exacting has been so often pointed out that any discussion of them would serve no useful purpose. Measured by this standard the evidence in this case does not justify the decree rendered.

In the first place the evidence does not show that defendant ever made any promise to convey to plaintiff Belle Hersman upon consideration of services to be rendered the parents by her. The most that appears is that, when asked who would look after the parents, defendant said he "expected Belle to do that." "After the deed was made and signed," according to plaintiff herself, defendant told her "he would see that she was provided for." In explanation of this statement plaintiff says: "I had nothing to live on. I had nothing to buy anything for my father and mother, nothing." No witness testifies to any promise by defendant to convey to plaintiff Belle on condition that she care for the father and mother. Certainly a simple announcement by defendant, after the execution of the deed to him, that he would "save the property for Belle" could not warrant the decree rendered. Besides there is other evidence tending to prove that no contract was made.

The fact that the witnesses for plaintiffs disagree somewhat as to what was said and somewhat as to the persons present when the conversations relied upon are said to have occurred, must be considered. Further, the fact that on the very day that Mr. and Mrs. Edwards executed their deed to defendant, plaintiff Belle and the parents moved out of the property and deemed it necessary to notify defendant and procure his consent to return thereto after Michael Hersman complained he did not want to leave the old home, is of much significance and tends strongly to support defendant's statement that the real agreement was that he was to sell the property and use the proceeds for the support of the old people. In addition, the contract

pleaded is rather a singular one. By it defendant was to receive nothing for the $500 he paid Mrs. Edwards, nothing for the support he was to furnish his parents and Belle Hersman, but the latter were to occupy the property until the parents died and then Belle was to get the property itself and thereafter defendant was to support Belle as long as she lived. No comment on this is necessary to make clear the remarkable character of the contract contended for. The letter defendant wrote Belle was written in July, 1900, nearly a year before the Edwards deed was executed and its importance in the case is very slight. It is also to be noted that even if the property is worth all plaintiffs say it is, defendant's contributions to the support of the parents and his sister amount to a sum far in excess of that value.

Defendant's testimony concerning the agreement with his mother, made after his father's death in 1903, to the effect that if he would continue to remit twenty-five dollars per month the property should be his, is corroborated by that of two brothers and a sister, and, in view of all the evidence, better seems to explain the acts of the parties concerned.

The conveyance by defendant to his son-in-law, even if made to defeat the claim of plaintiff after the suit was filed, cannot supply a lack of evidence of the contract pleaded.

The learned trial judge did not, in this case, have the witnesses before him, but decided it on a transcript of the evidence taken before another judge and upon depositions. The one witness who testified orally was not called to prove the contract relied upon. Neither were the witnesses residents of the county in which the case was decided nor of the circuit over which the trial judge presided, and, consequently, he cannot be presumed to have had them before him in other cases and to be thereby in a more

*Weighing Evidence on Appeal.*

advantageous position to weigh their evidence (an idea sometimes advanced) than is this court.

Tested by the standard fixed by the principles stated the evidence of the agreement pleaded is insufficient and the decree cannot stand. Under the pleadings and evidence there can be no recovery, and the judgment is reversed. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur—*Bond, J.,* in the result.