OKE McCUNE and VER McCUNE COBB, Appellants,
v. CHARLES H. GRAVES.

Division One, March 4, 1918.

1. **SPECIFIC PERFORMANCE: Oral Contract by Wife to Convey Land to Husband.** An oral contract by a wife to convey her land to herself and her husband as tenants by the entirety if he would purchase another adjoining tract and have it conveyed to them as tenants by the entirety and would build at his own expense a dwelling house on her tract, being clearly established beyond a reasonable doubt and having been fully performed on his part and never repudiated by her, authorizes the court, after her death, to decree title of her tract in him.

2. ————: ————: **Mistake in Husband's Deed: Equitable Owner.** And although the deed by which the tract, bought and paid for by the husband, failed to convey it, owing to a wrongful description, he and his wife, because of their oral agreement that it should be conveyed to them as tenants by the entirety, became the equitable owners of said tract, and he also became the equitable owner of an estate by the entirety in the wife's tract which she had agreed was, in pursuance to his purchase, to be enjoyed by both as tenants by the entirety, and a deed made by the original grantors to him, after the wife's death, in correction of their former deed, conveyed to him the legal title of the tract bought and paid for by him, and authorized the court to vest the legal title of the wife's tract in him, as against her heirs.

3. ————: ————: ————: **Removed by Deed of Correction.** The problem of establishing a mistake in a deed is solved by a deed of correction executed by the original grantors.

Appeal from Ralls Circuit Court.—*Hon. W. T. Ragland*, Judge.

AFFIRMED.

*David H. Eby* and *Ben E. Hulse* for appellants.

(1)   The title to real estate should not be permitted to slumber in the uncertainty of oral contracts to convey.   A parol contract to convey real estate is an exception engrafted by courts of equity on the Statute

of Frauds which requires all such contracts to be in writing. The evidence in this case is not of such a character as to touch the conscience of the court and call into play the exception to the statute. To warrant specific performance of an oral contract to convey real estate, such as the contract in suit, the proof must leave no reasonable doubt that the contract was made. Johnson v. Quarles, 46 Mo. 423; Ringo v. Richardson, 53 Mo. 385; Berry v. Hartzell, 91 Mo. 132; Veth v. Gierth, 92 Mo. 97; Cherbonnier v. Cherbonnier, 108 Mo. 252; Fanning v. Doan, 139 Mo. 392; Kinney v. Murray, 170 Mo. 674; McKee v. Higbee, 180 Mo. 263; Russell v. Sharp, 192 Mo. 270; Kirk v. Middlebrook, 201 Mo. 245; Wales v. Holden, 209 Mo. 552; Collins v. Harrell, 219 Mo. 279; Forrister v. Sullivan, 231 Mo. 345; Oliver v. Johnson, 238 Mo. 359; Walker v. Bohannan, 243 Mo. 119; Hersman v. Hersman, 253 Mo. 175; Wanger v. Marr, 257 Mo. 482. (2) The defendant has wholly failed to meet and perform the terms of the parol agreement set up in his answer and upon which he relies. The execution of the deed, dated August 22, 1908, by the Kraft heirs to defendant and said Jennie E. Graves, is in no respect a compliance with the terms of the alleged contract, and the defendant has no ground of complaint if a court of equity leaves him in the position in which he has placed himself and refuses to compel the other party to perform. Secret Service Co. v. Mfg. Co., 125 Mo. 140; Pomeroy v. Fullerton, 131 Mo. 581; Hollman v. Conlon, 143 Mo. 369; Real Est. Co. v. Spelbrink, 211 Mo. 671; McQuary v. Land Co., 230 Mo. 342; Munyon v. Hartman, 262 Mo. 449; Ranck v. Wickwire, 255 Mo. 42; Curtis v. Sexton, 142 Mo. App. 179; Taylor v. Longworth, 14 Peters (U. S.), 174; Holgate v. Eaton, 116 U. S. 40; People v. Bldg. Co., 92 N. Y. 98.

*J. O. Allison* and *E. L. Alford* for respondent.

The oral contract which respondent asks to be specifically enforced was proven beyond doubt. The trial court could reach no other conclusion than that

to refuse respondent equitable relief would be to permit a fraud to be perpetrated on him. The evidence in support of the contract fully measures up to the most rigid requirements ever announced in this jurisdiction in cases where an oral contract for the sale of land was sought to be enforced. Merrill v. Thompson, 252 Mo. 714; Healey v. Simpson, 113 Mo. 340; School District v. Holt, 226 Mo. 406; West v. Bundy, 78 Mo. 407; Daugherty v. Hortsel, 91 Mo. 161; White v. Ingram, 110 Mo. 474; Hall v. Harris, 145 Mo. 614; Hubbard v. Hubbard, 140 Mo. 300; Bond v. Read, 131 Mo. 558; Webb v. Toms, 86 Mo. 591; McQuitty v. Wilhite, 247 Mo. 163; Whitaker v. Lewis, 264 Mo. 208. In each of the cases cited by appellant the evidence in support of the oral contract was weak and unsatisfactory as compared with the evidence in support of the contract under consideration. In some of these cases there was a sharp conflict in the evidence. In others the acts relied upon to establish performance on the part of complainant were not referable to the alleged contract, and in such cases the decisions turned on this point. In still other cases so cited the contract as proven was indefinite as to what particular property was to be conveyed and, of course, specific performance could not be decreed. In several of the cases the evidence consisted solely of the loosest of declarations and admissions made by one deceased, and made from twenty-five to forty years before the trial, and unsupported by corroborating actions, facts or circumstances. The appellate court will defer somewhat to the conclusion reached by the trial court on matters of fact, when much depends on the demeanor of the witnesses. Berry v. Hartzell, 91 Mo. 132; Erskine v. Loewenstein, 82 Mo. 301; Choteau v. Allen, 70 Mo. 336; McQuitty v. Wilhite, 247 Mo. 163. (2) Respondent in good faith purchased the Kraft land and paid the price, $3000; he procured the deed to be made to himself and his wife, Jennie E. Graves, all in an honest attempt to carry out his part of the contract. All of the interested parties, grantors and grantees,

thought the description correct, and that the land had
been properly conveyed. In fact, the substantial title
did pass under the deed, and all parties treated it as
an absolute conveyance and acted accordingly. It was
a substantial, meritorious and valuable compliance
and performance by respondent, and, except for a
mistake in the description of the land overlooked by
all the parties, and which mistake could easily be cor-
rected, was a literal and complete performance on the
part of respondent. Equity looks to the substance
of transactions and regards the spirit of an obligation
rather than its mere form. So all that is generally
demanded in equity is a substantial compliance with
the agreement sought to be specifically enforced, on
the part of him who asks the aid of equity to give
it effect. Secret Service Co. v. Mfg. Co., 125 Mo. 140;
Blanton v. Distilleries Co., 120 Fed. 349; Willard v.
Tayloe, 8 Wall. 557; Taylor v. Longworth, 14 Peters
(U. S.), 174. Mrs. Graves never rescinded the contract,
and appellants will not now be permitted to do so.
One who has a right to refuse to perform a contract
or rescind because of failure or default of the other
party to perform according to the terms of the con-
tract must, when resisting specific performance, do so,
and at the same time return the money or other thing
of value received under the contract. He cannot refuse
to perform and at the same time retain the benefits
derived from the contract. Powell v. Hunter, 257 Mo.
447; Harvey v. Morris, 63 Mo. 477; Lanyon v. Ches-
ney, 186 Mo. 555; Hunt v. Marsh, 80 Mo. 396; Smith
v. Bushby, 15 Mo. 387; Cartwright v. Culver, 74 Mo.
182; Lockwood v. Railroad, 65 Mo. 236; Pulliam v.
Burlingame, 81 Mo. 118; Pershing v. Canfield, 70 Mo.
140. (3) Respondent paid $3000 for the Kraft eighty
and procured a deed to himself and Jennie E. Graves,
which purchase and deed, although the description was
incorrect in the deed, at least made respondent and his
wife the equitable owners of the Kraft eighty. This
was at least a valuable part performance of the con-
tract on the part of respondent. Again, he went into

possession of the 71.10 acres and erected valuable and lasting improvements thereon, acts referable solely to the oral contract. Jennie E. Graves, as the chancellor found, entered with her husband into the joint possession of the Kraft eighty. The courts have uniformly held that under such conditions specific performance will be decreed. Despain v. Carter, 21 Mo. 335; Johnson v. McGruder, 15 Mo. 365; Hays v. Railway, 108 Mo. 544; Adair v. Adair, 78 Mo. 630; Johnson v. Hurley, 115 Mo. 513; Walker v. Owen, 79 Mo. 563; Tatum v. Brooker, 51 Mo. 148; Young v. Montgomery, 28 Mo. 604; Dickerson v. Chrisman, 28 Mo. 134; Anderson v. Shockley, 82 Mo. 250.

RAILEY, C.—On October 1, 1914, appellants commenced this action against defendant in the circuit court of Ralls County, under the provisions of Section 2535, Revised Statutes 1909, to quiet title to the 71.10 acres of land described in the petition and located in said county, which was formerly owned by Jennie E. Graves, who is the common source of title to said land. Plaintiffs are the children and only heirs at law of said Jennie E. Graves by her former marriage with one Jeff McCune, from whom she was afterwards divorced.

On or about the 11th day of December, 1889, after obtaining a divorce, said Jennie E. Graves married the defendant herein, and continued to live with him as his wife, from the time of said marriage to the date of her death, on or about the 9th day of June, 1914.

The defendant filed an equitable answer claiming title to the 71.10 acres of land aforesaid, under and by virtue of an oral agreement made with his wife in 1908.

The testimony concerning the matters in controversy will be considered in the opinion.

The trial court found the issues in favor of defendant, rendered its judgment accordingly, divested said plaintiffs of the legal title to the land in controversy and vested the same in defendant, etc. Plaintiffs filed their motion for a new trial, which was overruled, and the cause duly appealed by them to this court.

I.  Under appellants' points and authorities, in proposition one, it is said: "To warrant specific performance of an oral contract to convey real estate, such as the contract in suit, the proof must leave no reasonable doubt that the contract was made."

Oral Contract.

The following authorities are cited in support of above proposition: Johnson v. Quarles, 46 Mo. 423; Ringo v. Richardson, 53 Mo. 385; Berry v. Hartzell, 91 Mo. 132; Veth v. Gierth, 92 Mo. 97; Cherbonnier v. Cherbonnier, 108 Mo. 252; Fanning v. Doan, 139 Mo. 392; Kinney v. Murray, 170 Mo. 674; McKee v. Higbee, 180 Mo. 263; Russell v. Sharp, 192 Mo. 270; Kirk v. Middlebrook, 201 Mo. 245; Wales v. Holden, 209 Mo. 552; Collins v. Harrell, 219 Mo. 279; Forrister v. Sullivan, 231 Mo. 345; Oliver v. Johnson, 238 Mo. 359; Walker v. Bohannan, 243 Mo. 119; Hersman v. Hersman, 253 Mo. 175; Wanger v. Marr, 257 Mo. 482. We have no fault to find with the legal principle announced in the above quotation, when applied to proper facts, nor with the authorities cited in support of same.

Keeping in mind the law as above stated, we now proceed to a consideration of the facts as disclosed by the evidence. In passing, it is well to observe that plaintiffs introduced no evidence relating to the merits of the controversy, aside from that showing their relationship to Mrs. Graves, her former marriage, divorce from McCune, marriage to defendant in 1888 or 1889, and the death of Mrs. Graves on or about June 9, 1914.

*Mrs. Emma E. Bell,* sister of defendant, testified, in substance, that in February, 1909, Mrs. Graves told her that defendant bought the 80 acres of Krafts in August, 1908, and that she and defendant had made an agreement to the effect that if he would have the deed made to themselves as tenants by the entirety, she would execute a deed conveying the land in controversy in the same way. She talked with witness about acting as a conduit, in order to transfer the title from *herself* to *themselves as tenants by the entirety.* Witness testified

that Mrs. Graves told her that defendant had bought the 80 acres of Kraft land that joined her 71.10 acres.

Roy Boyd testified that when the building was being constructed on the above land of Mrs. Graves, and while he was working there, she told Mr. Cole how she came to have the improvements put on *her* land. She said she had made a proposition to Dr. Graves to the effect that, if he would make a deed to the 80 acres he had bought of the Kraft land, "so that she would get the land at his death, if it occurred first, why she would make a deed to her 72, whatever it is, to him, so that he would get it if she died first. She stated that she had made that agreement with Dr. Graves when he bought the Kraft eighty."

*Thornton M. Cole* testified that in October, 1908, while defendant and his wife were selecting a site for their house and improvements, defendant wanted to put them on the 80 acres west of the land in controversy, but a tenant or occupant of part of the 80 acres objected to having his shanty or building torn down, at the place where defendant wanted to build. Witness said Mrs. Graves asked defendant to build on her land. He (defendant) remarked that he had no deed to it; that she had not made him a deed to it. In reply, *she said she would make a deed to it if he would put the improvements on her land.* He finally consented to do it. A few days afterwards, witness said, Mrs. Graves re-, marked, that the 80 acres and 72 acres would make a nice farm. She said she was going to have her deed made to her and Dr. Graves, and that he had made his deed to him and her. Witness said that while he and Boyd were at work on the house, Mrs. Graves brought them some nails, and while there, Boyd said, if he had been in Dr. Graves's place, he didn't think he would have put the house on the land of somebody else. She then remarked, that defendant had his deed made to himself and wife, and that if he died first she would get his land; that if she died first, defendant would get her land. She said she was going to change her deed.

*Thomas L. Clark* testified, in substance, that about the time defendant bought the Kraft 80 acres, while they were talking about it and the 72 acres, Mrs. Graves said to him that "Dr. Graves and me, when we bought that Kraft eighty, agreed that if he would make the deed to us both I would deed the 72 acres to him and me." She said: "I want to deed it to you and I am going to deed it to Dr. Graves." Witness said she wanted to deed it to him and have him deed it back to defendant and his wife. This witness further testified that all of the improvements put on the land after Dr. Graves bought the 80, were on the 72 acres. There was a well on the 80 acres. On cross-examination, witness testified: "She told me at that time that Dr. Graves had had his deed to the Kraft land made to him and her, and that she wanted to have her land so conveyed as to make it to him and her." This conversation occurred in the fall of 1908. She remarked, he says, "that we *agreed* to do that."

*George W. Briggs* testified, in substance, that in the fall of 1908, or early part of 1909, Mrs. Graves told him they had *agreed* to put up the house on her land and that she was going to make a deed like that made to the Kraft land, so that the survivor would take the land. On cross-examination, witness said Mrs. Graves told him that defendant had the Kraft land conveyed to him and her and she wanted her land placed the same way.

We are satisfied, beyond a reasonable doubt, from the foregoing, and other facts connected with the case, that, during the year 1908, defendant was negotiating with the Kraft heirs for the purchase of the west half of the northwest quarter of section 10, township 54, range 6, west, in Ralls County, Missouri, which tract lies immediately west of the 71.10 acres owned by his wife; that while defendant was negotiating for said 80 acres, during the year 1908, he and his wife entered into an oral agreement and contract concerning said 71.10 acres owned by his wife, and the 80 acres aforesaid, which said contract and agreement was in substance as follows: Defendant's wife promised and agreed with him,

that if he would purchase the 80 acres above described lying immediately west of her land, and have the same conveyed to them as tenants by the entirety, she would, by proper conveyance, vest the title to the 71.10 acres in controversy in defendant and herself as tenants by the entirety; that pursuant to said agreement, and to comply therewith, defendant, on August 22, 1908, purchased from S. J. Kraft, Dan Kraft, Sol Kraft and Annie C. Jackson—who were the owners—said 80 acres above described; that he paid them the purchase price for said land and directed them to execute a proper deed therefor to himself and wife as tenants by the entirety; that on said date, they attempted to execute and deliver to defendant, and wife, a proper deed to the above-described 80 acres, as tenants by the entirety, but through mistake or oversight conveyed land which they did not sell to defendant, and failed to convey the 80 acres aforesaid, which they *intended* and *attempted to convey;* that the incorrect deed aforesaid, was duly recorded in Book 80 at page 318 of the Recorder's office of Ralls County, Missouri; that said defendant and wife accepted said deed, believing it correctly described the 80 acres heretofore mentioned, which they had bought and paid for, lying immediately west of the 71.10 acres; that by reason of the foregoing transactions, the defendant and his wife became, as tenants by the entirety, the equitable owners of the 80 acres lying immediately west of the 71.10 acres in controversy; that the mistake aforesaid was not discovered until some time after the institution of this suit; that in recognition of the mistake aforesaid, the above named grantors, S. J. Kraft et al., on May 17, 1915, executed and delivered to defendant, a deed of correction, in which they referred to the mistake aforesaid; that in said deed of correction they properly described the west half of the northwest quarter of section 10, township 54, range 6, west, which they had sold and attempted to convey to defendant and wife as aforesaid.

It appears from the testimony that defendant paid $3000 for the 80 acres of land bought from the Kraft

heirs; that he paid over $1500 for the house and other improvements which he put upon the land in controversy; that said $3000 and the $1500 aforesaid were paid by defendant under and pursuant to the agreement and contract with his wife heretofore mentioned. It further appears from the evidence that after the first deed was made by the Kraft heirs to defendant and wife, as tenants by the entirety, they took possession of said 151 acres, and jointly used the same as their home, until the death of Mrs. Graves. The record shows that Mrs. Graves owned 160 acres of other land adjacent to that bought from the Krafts.

We find from the evidence that defendant and wife made the oral agreement and contract aforesaid, and that the same was based upon a valuable consideration; that the title to said 151 acres of land was to be placed in the names of defendant and wife as tenants by the entirety. Unless the *mistake* in the deed from the Kraft heirs to defendant and wife, executed in 1908, or the deed from said heirs to *defendant,* made since the institution of this suit, precludes a recovery in an action of this character, the decree of the trial court should be affirmed.

II. Having found that defendant and wife made the oral contract and agreement heretofore mentioned, and that the same was based upon a valuable consideration, we will consider the legal effect of said contract, in respect to the 80 acres lying immediately west of Mrs. Graves's land and the 71.10 acres in controversy.

Mistake in Deed.

Defendant bought the above 80 acres from the Kraft heirs and paid them therefor, although the deed made, through mistake, failed to describe the land thus bought. Defendant and wife, by virtue of said contract and the Kraft deed, made in 1908, because the equitable owners of said 80 acres, as tenants by the entirety. [Rhodes v. Outcalt, 48 Mo. 367; 10 R. C. L., sec. 133, page 383-4, and cases cited.] Under and pursuant to the contract aforesaid, between defendant and his wife, they became

273 Mo.—38

the *equitable* owners, as tenants by the entirety, of the 71.10 acres in controversy, during the lifetime of Mrs. Graves, although ,the *legal* title to said land was in her. From the foregoing, it follows, that defendant and his wife, while the latter was alive, became the equitable owners, under said contract, as tenants by the entirety, of the entire 151.10 acres. After her death, he became the sole equitable owner of said 151.10 acres, as surviving tenant by the entirety. Having received from the Krafts the deed of correction as to the 80 acres supra, it made him the legal and absolute owner of same. It follows, that as against these plaintiffs, who are not innocent purchasers for value, the defendant, as surviving tenant by the entirety, is entitled to a decree vesting in him the legal title to the 71.10 acres in controversy, and declaring him to be the absolute owner thereof.

III. It is contended by appellants that if Mrs. Graves were alive and defendant was seeking a decree for specific performance against her as to the 71.10 acres, the court would deny him a decree until he had perfected the title to the Kraft land. **Perfecting Title.** We are not confronted with any such issue, but the case *now* stands *with the Kraft title perfected* and defendant seeking to enforce the oral agreement aforesaid against these plaintiffs, who are the successors in title to Mrs. Graves. They occupy no better position here than she would if alive and was resisting this action for specific performance.

IV. It is further insisted by appellants that if Mrs. Graves had caused the title to the 71.10 acres to be transferred to herself and defendant, as tenants by the entirety, without the title to the Kraft land having been perfected, and defendant had then died, she would have been compelled to take chances on proving the oral agreement aforesaid, in order to perfect the Kraft title. **Speculative Issues.** Suffice it to say that no such issue is in the case, but even if it were, such contention of counsel is untenable, as Mrs. Graves, under the circumstances named, upon the death of her hus-

band, would have been the surviving tenant by the entirety, mentioned in the Kraft deed of 1908. Without any reference to the oral agreement aforesaid, she would have been entitled to have the Kraft title perfected by simply showing a mistake in the description of the land in the former deed. We see no necessity, however, for speculating in respect to this subject, as the Kraft heirs recognized their mistake and promptly executed a deed of correction when called upon to do so.

V. The undisputed evidence shows that defendant paid the Krafts $3000 for the 80 acres lying immediately west of the 71.10 acres in controversy; that he paid more than $1500 for valuable improvements upon his wife's 71.10 acres. There is no evidence in the record tending to show that Mrs. Graves was ever dissatisfied with anything the defendant did, with reference to the 151 acres. On the contrary, it is clear that she intended at some future time to have the title to the land in controversy placed in the names of herself and husband, as tenants by the entirety, but, like many others, procrastinated until overtaken by death. She owned 160 acres of land close to that in suit, and after stating to witness Briggs that she wanted the title to her 71.10 acres placed in the names of defendant and herself, she said "it would leave eighty for each of the children and seventy for Dr. Graves."

*Satisfaction With Agreement.*

There is nothing in the record to indicate that Mrs. Graves ever intended to repudiate the agreement which she made with defendant.

VI. The circuit judge, as chancellor, tried this case with marked ability and fairness. The conclusion which he reached, in regard to the facts, is strongly supported by the testimony, and meets with our approval.

*Conclusion.*

The judgment below was for the right party and is accordingly affirmed. *Brown, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All of the judges concur; Bond, P. J., in paragraph six and result.